**Joe B. DRIVER, Appellant,**

v.

**Arthur HINNANT, Superintendent Halifax County Prison Unit of the North Carolina State Prison Department, Appellee.**

**No. 10166.**

United States Court of Appeals
Fourth Circuit.

Argued Dec. 7, 1965.

Decided Jan. 22, 1966.

Anthony Mason Brannon, Durham, N. C. (Brannon & Read, Durham, N. C., on brief), for appellant.

Theodore C. Brown, Jr., Asst. Atty. Gen. of North Carolina (T. W. Bruton, Atty. Gen. of North Carolina, on brief), for appellee.

Peter Barton Hutt, Richard A. Merrill and Michael S. Horne, Covington & Burling, Washington, D. C., for American Civil Liberties Union, National Capital Area Civil Liberties Union and Washington Area Council on Alcoholism, amici curiae.

Before BRYAN and BELL, Circuit Judges, and MAXWELL, District Judge.

ALBERT V. BRYAN, Circuit Judge:

The question is whether a chronic alcoholic, as appellant Joe B. Driver has been proved and confesses to be, can Constitutionally be criminally convicted and sentenced, as he was, for public drunkenness.

Admitting the truth of the charge under the North Carolina statute, he grounded his defense on the Eighth Amendment, applied to the States under the due process clause of the Fourteenth, barring the infliction of "cruel and unusual" punishment. His argument may be condensed in this syllogism: Driver's chronic alcoholism is a disease which has destroyed the power of his will to resist the constant, excessive consumption of alcohol; his appearance in public in that condition is not his volition, but a compulsion symptomatic of the disease; and to stigmatize him as a criminal for this act is cruel and unusual punishment.

This plea failed in the State courts. State v. Driver, 262 N.C. 92, 136 S.E.2d 208 (1964). Thereupon he unsuccessfully petitioned the Federal district court for habeas corpus to procure release from imprisonment ordered on his sentence. Driver v. Hinnant, 243 F.Supp. 95 (E.D. N.C.1965). From this denial he appeals.

We find merit in his petition. Accordingly we must vacate the judgment on review and remand for the further proceedings later outlined.

The State statute is N.C. Gen. Stat. § 14–335 reading as follows:

"If any person shall be found drunk or intoxicated on the public highway, or at any public place or meeting, in any county * * * herein named, he shall be guilty of a misdemeanor, and upon conviction shall be punished as is provided in this section:

"12. In * * * Durham [County] * * * by a fine, for the first offense, of not more than fifty dollars ($50.00), or imprisonment for not more than thirty days; for the second offense within a period of twelve months, by a fine of not more than one hundred dollars ($100.00), or imprisonment for not more than sixty days; and for the third offense within any twelve months' period such offense is declared a misdemeanor, punishable as a misdemeanor within the discretion of the court."

As more than a three-time repeater in Durham County, Driver was sentenced to imprisonment for two years for each of two offenses occurring on December 18 and 19, 1963, respectively, the terms running concurrently. While he pleaded guilty, the evidence taken as a guide to an appropriate sentence conclusively proved him a chronic alcoholic, his inebriation in public view an involuntary exhibition of the infirmity. The District Judge had no doubts about it. Actually, it is a concessum in the case.

Driver was 59 years old. His first conviction for public intoxication occurred at 24. Since then he has been convicted of this offense more than 200 times. For nearly two-thirds of his life he has been incarcerated for these infractions. Indeed, while enlarged on bail pending determination of this appeal, he has been twice convicted for like violations.

Thus the question here is beyond the difficult determination of whether an accused is a chronic alcoholic. Our discussion and decision, it must be recalled throughout, presuppose an indisputable finding that the offender is a "chronic alcoholic". As defined by the National Council on Alcoholism, he is a "person who is powerless to stop drinking and whose drinking seriously alters his normal living pattern".[1] The American Medical Association defines "alcoholics" as "those excessive drinkers whose dependence on alcohol has attained such a degree that it shows a noticeable disturbance or interference with

1. Public Health Service Publication, No. 730, "Alcoholism", prepared by the National Institute of Mental Health, National Institutes of Health, U.S. Department of Health, Education and Welfare (1965).

their bodily or mental health, their interpersonal relations, and their satisfactory social and economic functioning".[2] The World Health Organization recognizes alcoholism "as a chronic illness that manifests itself as a *disorder of behavior*".[3] (Accent added.) It is known that alcohol can be addicting,[4] and it is the addict—the involuntary drinker—on whom our decision is now made.[5] Hence we exclude the merely excessive—steady or spree—voluntary drinker.

■ This addiction—chronic alcoholism—is now almost universally accepted medically as a disease.[6] The symptoms, as already noted, may appear as "disorder of behavior". Obviously, this includes appearances in public, as here, unwilled and ungovernable by the victim. When that is the conduct for which he is criminally accused, there can be no judgment of criminal conviction passed upon him. To do so would affront the Eighth Amendment, as cruel and unusual punishment in branding him a criminal, irrespective of consequent detention or fine.[7]

■ Although his misdoing objectively comprises the physical elements of a crime, nevertheless no crime has been perpetrated because the conduct was neither actuated by an evil intent nor accompanied with a consciousness of wrongdoing, indispensable ingredients of a crime. Morissette v. United States, 342 U.S. 246, 250–252, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Nor can his misbehavior be penalized as a transgression of a police regulation—malum prohibitum—necessitating no intent to do what it punishes. The alcoholic's presence in public is not his act, for he did not will it. It may be likened to the movements of an imbecile or a person in a delirium of a fever. None of them by attendance in the forbidden place defy the forbiddance.

■■ This conclusion does not contravene the familiar thesis that voluntary drunkenness is no excuse for crime. The chronic alcoholic has not drunk voluntarily, although undoubtedly he did so originally. His excess now derives from disease. However, our excusal of the chronic alcoholic from criminal prosecution is confined exclusively to those acts on his part which are compulsive as symptomatic of the disease. With respect to other behavior—not characteristic of confirmed chronic alcoholism—he would be judged as would any person not so afflicted.

■ Of course, the alcohol-diseased may by law be kept out of public sight. Equally true, the North Carolina statute does not punish them solely for drunkenness, but rather for its public demonstration. But many of the diseased have no homes or friends, family or means to keep them indoors. Driver examples this pitiable predicament, for he is apparently without money or restraining care.

■ Robinson v. State of California, supra, 370 U.S. 660, 82 S.Ct. 1417 (1962), sustains, if not commands, the view we take. While occupied only with a State statute declaring drug addiction a misdemeanor, the Court in the concurrences and dissents, as well as in the majority opinion, enunciated a doctrine encompassing the present case. The California

---

2. See fn. 1.

3. See fn. 1. Chief Judge Butler noted below, 243 F.Supp. 95, 97, and followed the definition of Congress appearing in the District of Columbia Code, § 24–502, that a chronic alcoholic is "any person who chronically and habitually uses alcoholic beverages to the extent that he has lost the power of self-control with respect to the use of such beverages."

4. See fn. 1.

5. See Justice Clark dissenting in Robinson v. State of California, 370 U.S. 660, 684, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

6. Of the myriad authorities these citations will suffice: 2 Cecil and Loeb, A Textbook of Medicine, at 1625 (10th ed. 1959); Manfred S. Guttmacher and Henry Weihofen, Psychiatry and The Law, at 318–322 (1952 ed.); Jellinek, The Disease Concept of Alcoholism, at 41–44 (1960).

7. See concurring opinion of Justice Douglas in Robinson v. State of California, supra, 370 U.S. 660, 676, 82 S.Ct. 1417.

statute criminally punished a "status"—drug addiction—involuntarily assumed; the North Carolina Act criminally punishes an involuntary symptom of a status—public intoxication. In declaring the former violative of the Eighth Amendment, we think pari ratione, the *Robinson* decision condemns the North Carolina law when applied to one in the circumstances of appellant Driver. All of the opinions recognize the inefficacy of such a statute when it is enforced to make involuntary deportment a crime.

The Constitutional premise of *Robinson*, and so apt here, is found in the opinion, 370 U.S. at 666, 82 S.Ct. at 1420:

> "It is unlikely that any State at this moment in history would attempt to make it a criminal offense for a person to be mentally ill, or a leper, or to be afflicted with a venereal disease. A State might determine that the general health and welfare require that the victims of these and other human afflictions be dealt with by compulsory treatment, involving quarantine, confinement, or sequestration. But, in the light of contemporary human knowledge, a law which made a criminal offense of such a disease would doubtless be universally thought to be an infliction of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. See [State of La. ex rel.] Francis v. Resweber, 329 U.S. 459. [67 S.Ct. 374, 91 L.Ed. 422.]"

The Director of the Prison Department of North Carolina [8], has patly and pithily termed the prosecution of the chronic alcoholic. Driver, he said, is one of the "unfortunates whose only offense is succumbing publicly to the disease of alcoholism".

We do not annul the North Carolina statute. It is well within the State's power and right to deter and punish public drunkenness, especially to secure others against its annoyances and intrusions. Robinson v. State of California, supra, 370 U.S. 660, 664, 82 S.Ct. 1417. To this end any intoxicated person found in the street or other public areas may be taken into custody for inquiry or prosecution. But the Constitution intercedes when on arraignment the accused's helplessness comes to light. Then it is that no *criminal* conviction may follow.

The upshot of our decision is that the State cannot stamp an unpretending chronic alcoholic as a criminal if his drunken public display is involuntary as the result of disease. However, nothing we have said precludes appropriate detention of him for treatment and rehabilitation so long as he is not marked a criminal.

The judgment denying appellant's petition for habeas corpus will be vacated, and the case returned to the District Court with directions to order Driver's release from the impending detention by North Carolina unless, within 10 days, the State be advised to take him into civil remedial custody.

Vacated and remanded.