**Robert Bryant RAKES**

**v.**

**Bernard S. COLEMAN et al.**

**Civ. A. No. 174–70–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

June 6, 1973.

Philip J. Hirschkop, Alexandria, Va., for plaintiff.

Andrew P. Miller, Atty. Gen., of Va., C. Tabor Cronk, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

This cause is before the Court on plaintiff's amended complaint wherein he seeks a judgment declaring that the eighth amendment to the Constitution requires state courts of Virginia to recognize the defense of alcoholism to a charge of drunk in public made under Virginia Code § 18.1–237 (Supp.1970). The amended complaint also requests the Court to declare that it is unconstitutional for an alcoholic to be held in jail "for the substantive offense of drinking in public or being drunk in public or to otherwise incarcerate an alcoholic with-out the benefit of treatment or for any other purpose other than treatment and without rehabilitative facilities."

This action was originally commenced on March 25, 1970, and argument was heard and memoranda submitted on motions to dismiss filed by the defendants. A memorandum and order were entered on September 28, 1970, D.C., 318 F. Supp. 181, which, *inter alia*, (1) permitted the case to proceed as a class action pursuant to Rules 23(a) and 23(b), F. R.Civ.P. The plaintiff class, represented by Rakes, was deemed to be "all persons who have been committed pursuant to Va.Code § 18.1–200.1 (Supp.1970) or recommitted pursuant to Va.Code § 18.1–202 (Supp.1970) to the custody of the Department of Welfare and Institutions in regular penal institutions." The defendant class, represented by Judge Bernard J. Coleman, constituted all judges empowered to commit persons pursuant to § 18.1–200. 1; (2) dismissed the complaint as to the prayer for injunctive relief from the enforcement of § 18.1–237; (3) dismissed the complaint insofar as it sought injunctive or other affirmative relief requiring defendants to implement rehabilitation for persons committed to the Department of Welfare and Institutions under § 18.1–200; (4) dismissed the complaint as to defendants Holton and Miller; and (5) postponed until trial on the merits the motion to dismiss as to the allegations reference to the unconstitutionality of the commitment or recommitment without treatment of alcoholics pursuant to §§ 18.1–200.1 and 18.1–202. Rakes v. Coleman, 318 F.Supp. 181 (E. D.Va.1970).

On February 14, 1972, after many intervening delays and pleadings, and upon motion of the defendants, the Court concluded that the action had become moot by virtue of Va.Code §§ 18.-1–200.1 and 18.1–202 being struck down by the Virginia Supreme Court in Hancock v. Brown, 212 Va. 215, 183 S.E.2d 149 (1971). The Court amended its pre-trial order of February 8, 1972 accordingly and permitted the plaintiff to

amend his complaint to raise the issue of the present validity of Driver v. Hinant, 356 F.2d 761 (4th Cir. 1966), which *inter alia* held that chronic alcoholism is a disease which may not be punished by criminal sanction. The amended complaint was filed and answered, memoranda were submitted, and argument was heard by the Court on 3/14/72. During the plenary hearing counsel for the plaintiff represented to the Court that plaintiff Rakes was incarcerated by the Department of Welfare and Institutions pursuant to a forgery conviction. The matter was taken under advisement. Although the Court stated to counsel that it had tentatively concluded to dismiss this action, it refrained from so doing at counsel's request pending further memoranda and evidence represented. This action remained in this posture without further action by counsel until 1/2/73, at which time plaintiff moved to reopen and supplement the records. Defendants have opposed that motion. On 2/26/73 the Court requested further memoranda with respect to standing problems under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L. Ed.2d 669 (1971), and the applicability of a three judge panel to this action. Counsel have submitted memoranda in accordance with that request, and the preliminary issues raised thereby are now ripe for disposition. They will be considered in turn.

## I. STANDING

In its original posture, plaintiff class consisted of "all persons who have been committed pursuant to Va.Code § 18.1–200.1 (Supp.1970) or recommitted pursuant to Va.Code § 18.1–202 (Supp. 1970) to the custody of the Department of Welfare and Institutions in regular penal institutions." 318 F.Supp. at 194. That class became defunct as of 7/1/71, the date the repeal of § 18.1–200.1 became effective. Although plaintiff's amended complaint avers no change in the composition of the plaintiff class, he now asserts by memorandum that the class is composed of those persons convicted or being convicted under § 18.1–237.[1] The Court infers from the phrase "being convicted" an allegation with respect to an ongoing scheme of prosecutions which necessarily includes prosecutions not yet brought. Defendants object that this averment with respect to convictions under § 18.1–237 is speculative and deny that the averred class has standing to pursue a challenge to the statute based on Driver v. Hinant by virtue of Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968).

Although the complaint is technically without a proper class averment, in the interest of expediency and justice the Court will proceed on the basis that plaintiff's pleadings may be amended further to conform to the position espoused in his memorandum.

In support of his claim that he and others of the class he purports to represent are being detained pursuant to § 18.1–237, Rakes has tendered numerous affidavits to the Court. The gravamen of these affidavits is that Rakes has been incarcerated under § 18.1–237, that at least 10 others in the Richmond City Jail are, as of the date of the affidavits likewise incarcerated on a charge of "drunk in public" (which charge presumably is based upon the authority given municipalities in § 18.1–237) and that the affiants are not being given re-

---

1. § 18.1–237. Profane swearing and drunkenness.—If any person arrived at the age of discretion profanely curse or swear or get or be drunk in public he shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than one nor more than twenty-five dollars. If any person shall be convicted for being drunk in public three times within one year in this State, upon the third or any subsequent conviction for such offense within the period of one year, such person may be punished by imprisonment in jail for not more than six months or by a fine of not more than fifty dollars, or by both such fine and imprisonment. Counties, cities and towns may pass or adopt ordinances or resolutions prohibiting and punishing the conduct and acts embraced in this section.

habilitative treatment. Affiants also assert that they are chronic alcoholics.

Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), is the seminal opinion with respect to standing. Although *Data Processing* interprets standing under the Administrative Procedure Act (APA) the requirements set forth there have been applied in a virtually identical manner to non-APA cases. Thus in Linda R.S. and Richard, D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), the Supreme Court stated that plaintiff must allege an actual injury to himself and further show that this injury is to an interest that is protected by the legal right which he asserts is violated by the challenged acts of the defendant. See also Fowler v. Alexander, 478 F.2d 694 (4th Cir. 1973). *Linda R.S.* stresses the particular importance of alleging a "sufficient nexus between . . . injury and the government action [challenged]" when that challenged action is a state criminal prosecution. The Court stated at 410 U.S. 618, 93 S.Ct. 1149:

> "The party who invokes [judicial] power must be able to show . . . that he has sustained or is immediately in danger of sustaining some direct injury as the result of [a statute's] enforcement." Massachusetts v. Mellon, 262 U.S. 447, 488 [43 S.Ct. 597, 601, 67 L.Ed. 1078] (1923) (emphasis added). See also Ex parte Levitt, 302 U.S. 633, 634, [58 S.Ct 1, 82 L.Ed. 493] (1937). As this Court made plain in Flast v. Cohen, 392 U.S. 83 [88 S.Ct. 1942, 20 L.Ed.2d 947] (1968), a plaintiff must show "a logical nexus between the status asserted and the claim sought to be adjudicated . . . Such inquiries into the nexus between the status asserted by the litigant and the claim he presents are essential to assure that he is a proper and appropriate party to invoke federal judicial power." 392 U.S., at 102 [88 S.Ct. at 1953].

Rakes' continuing odyssey from jail to jail on drunk charges satisfies the Court that, upon release, Rakes will again be charged with drunkenness, denied the defense of alcoholism and incarcerated without rehabilitation. Those similarly situated are likewise in immediate danger of sustaining an alleged direct injury by virtue of the actions challenged here.

While ordinarily the satisfaction by a class representative of standing requirements carries the burden of establishing class standing, see *Rakes*, 318 F.Supp. at 189 et seq., defendants here challenge the appropriateness of plaintiff class. Under the Rule 23 prescription that the class has issues of law or fact in common, Rakes and those he represents share the following claims:

1) They are chronic alcoholics.

2) They are being and will be incarcerated pursuant to § 18.1–237.

3) They are denied the defense of alcoholism.

4) They are not being afforded rehabilitative treatment.

The defendants challenge the first allegation, i. e. that plaintiff class consists of chronic alcoholics. This challenge deserves serious consideration in view of the Supreme Court's holding in Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968), wherein the Court rejected an alcoholism defense to drunk charges in part because of the inadequacy of fact finding with respect to Powell's drinking problem or alcoholism itself. See 392 U.S. at 521, 88 S.Ct. 2145. The Court concludes, however, that these issues are more appropriately related to the merits of plaintiffs' claims. For these purposes the Court is satisfied that the allegations of the complaint and the affidavits are sufficient to establish standing.

## II. Younger v. Harris

Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its companion cases pose a serious obstacle to plaintiffs' prosecution of this suit.

The rule of Younger may be succinctly summarized as follows:

> [T]he possible unconstitutionality of a statute "on its face" does not in itself justify an injunction against good faith attempts to enforce it . . . [absent] any showing of bad faith harassment, or any other unusual circumstance that would call for equitable relief. 401 U.S. at 54, 91 S.Ct. at 755.

Samuels v. Mackell, 401 U.S. 66, 91 S. Ct. 764, 27 L.Ed.2d 688 (1971) extends *Younger* to similarly prohibit declaratory judgments which would have the same effect as an injunction prohibited under *Younger*. Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) moreover extends *Younger* to prohibit federal district court injunctions which operate as a "disruptive interference with the operation of the state criminal process short of an injunction against all state proceedings.[2] 401 U.S. at 84, 91 S.Ct. 674. The Court in *Perez* added at page 84, 91 S.Ct. at page 676:

> Moreover, the District Court retained jurisdiction "for the purposes of hereafter entering any orders necessary to enforce" its view of the proper procedures in the then-pending state obscenity prosecution. According to our holding in Younger v. Harris, supra, such federal interference with a state prosecution is improper. The propriety of arrests and the admissibility of evidence in state criminal prosecutions are ordinarily matters to be resolved by state tribunals, see Stefanelli v. Minard, 342 U.S. 117 [72 S.Ct. 118, 96 L.Ed. 138] (1951), subject, of course, to review by certiorari or appeal in this Court or, in a proper case, on federal habeas corpus. Here Ledesma was free to present his federal constitutional claims concerning arrest and seizure of materials or other matters to the Louisiana courts in the manner permitted in that State. Only in cases of proven harassment or prosecutions undertaken by state officials in

bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate. See Younger v. Harris, supra."

The application of these principles with respect to the alcoholism defense claim to pending prosecutions must be considered. The Court is dutybound not to interfere with present prosecutions, which a declaration with respect to an alcoholism defense for present prosecutions would have. Nevertheless there is serious question as to whether the *Younger* rationale applies to future prosecutions or if it does, whether the standard is as strict as in cases relating to pending prosecutions.

Little precedent exists with respect to this latter question because of the difficult standing problem, see Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed. 2d 696 (1971) and note 3 *infra*. Plaintiffs however have heretofore established standing based upon the reasonable expectation of future and continuing prosecutions. Accordingly, the issue of application of *Younger* to future prosecutions must be considered upon the rationale of that case.

The traditional rule with respect to future prosecutions is stated in Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1925):

> Ex parte Young, 209 U.S. 123 [28 S. Ct. 441, 52 L.Ed. 714] and following cases have established the doctrine that when absolutely necessary for protection of constitutional rights courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be done except under extraordinary circumstances where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the state and must decide

---

2. The district Court entered an order for suppression of evidence in a pending state criminal matter.

when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection. The Judicial Code provides ample opportunity for ultimate review here in respect of federal questions. An intolerable condition would arise if, whenever about to be charged with violating a state law, one were permitted freely to contest its validity by an original proceeding in some federal court. Hygrade Provision Co. v. Sherman, 266 U.S. 497, 500 [45 S.Ct. 141, 69 L.Ed. 402].

Cited with approval in Younger v. Harris, supra 401 U.S. at 45, 91 S.Ct. 746. See also 7 Moore's Federal Practice § 65.20[1].

Dumbrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) apparently broadened the Fenner rule with respect to threatened prosecutions which had a chilling effect upon First Amendment rights. See also Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), holding that abstention is not proper where federal court injunctive and declaratory relief is sought from threatened prosecutions under a state statute allegedly violative of freedom of speech guarantees of the First Amendment. The Court in *Younger*, however, carefully contextualized Dombrowski within the First Amendment setting and, further, within well-developed law providing for enjoining of *bad faith* prosecutions. 401 U.S. at 400 et seq., 91 S.Ct. 746.

What appears to the Court to be the well-articulated rule with respect to future prosecutions in *Fenner* and *Younger* [3] is seriously shaken, however, in Lake Carriers' Assn. v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). In that action the Court stated that the district court erred in abstaining for the reason that there was an absence of an immediate threat of prosecution of a challenged statute. (Abstention was upheld on other grounds). The Court noted at 406 U.S. 509, 92 S.Ct. 1757:

> In Younger v. Harris, 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669] (1971), and Samuels v. Mackell, 401 U.S. 66 [91 S.Ct. 764, 27 L.Ed.2d 688] (1971), this Court held that, apart from "extraordinary circumstances," a federal court may not enjoin a pending prosecution or declare invalid the statute under which the prosecution[s] [were] brought. The decisions there were premised on considerations of equity practice and comity in our federal system[s] that have little force in the absence of a pending state proceeding. In that circumstance, exercise of federal court jurisdiction ordinarily is appropriate if the conditions for declaratory or injunctive relief are met. See generally Perez v. Ledesma 401 U.S. 82, 93 [91 S.Ct. 674, 27 L.Ed.2d 701] (1971) (separate opinion).

The United States Court of Appeals for the Fifth Circuit has dismissed this apparent reversal as "pure dicta" and "inconceivable" in view of the careful reasoning of *Younger*. Becker v. Thompson, 463 F.2d 1338 (5th Cir. 1972). The Sixth Circuit has taken the contrary view of *Lake Carriers* in Armour and Co. v. Ball, 468 F.2d 76 (6th Cir. 1972), interpreting that decision as allowing injunction against future prosecutions when the "immediacy and reality of the controversy is plain." 468 F. 2d at 79. The Fourth Circuit has not addressed this issue and, to the best of the Court's knowledge, is not presently faced with the problem in pending matters.

Upon careful consideration, this Court is of the opinion that the Sixth Circuit interpretation of *Lake Carriers* should

---

3. See however, Wulp v. Corcoran, 454 F. 2d 826 (1st Cir. 1972), Lewis v. Kugler, 446 F.2d 1343 (3rd Cir. 1971) and Crossen v. Breckenridge, 446 F.2d 833 (6th Cir. 1971).

prevail. *Younger* may be squared with *Lake Carriers* by reading the *Younger* approval of *Fenner* as supportive of the Court's concern with a showing of irreparable injury rather than a concern with the question of future prosecutions. Support for this approach gains credence from other language in *Younger*:

In all of these cases [*Fenner* and progeny] the Court stressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction. In addition, however, the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is "both great and immediate." *Fenner, supra.* Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution. See, *e. g.,* Ex Parte Young, *supra,* at 145–147. Thus, in the *Buck* case [Watson v. Buck, 313 U.S. 387 at 400, 61 S.Ct. 962, at 966, 85 L.Ed. 1416], *supra,* at 400 [61 S.Ct. 962] we stressed:

"Federal injunctions against state criminal statutes, either in their entirety or with respect to their separate and distinct prohibitions, are not to be granted as a matter of course, even if such statutes are unconstitutional. 'No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid.' Beal v. Missouri Pacific Railroad Corp.,

312 U.S. 45, 49 [61 S.Ct. 418, 420, 85 L.Ed. 577]."

401 U.S. at 46, 91 S.Ct. at 751. In this context *Fenner* is supportive of the proposition, which is the thrust of *Younger,* that the alleged injury must be irreparable and great and immediate. While irreparable injury is normally required as a predicate to injunctive relief in traditional cases where injunction is sought, see Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937) and discussion, 7 Moore's Federal Practice § 65.18[3], it appears that the *Lake Carriers* decision requires also that the injury must also be "real and immediate" when a future state criminal prosecution is sought to be enjoined. The apparent result is that the injunction sought in cases such as this occupy a middle ground: a greater showing of harm is required to enjoin a future criminal prosecution than injunctive relief usually demands, but less than is required to enjoin a pending prosecution. This result is consistent with the stress on the importance of comity in *Younger* and as well the language in *Lake Carriers*.

 What the precise differences are in the respective burdens required for pending and future prosecutions will no doubt be explored as the Younger doctrine further evolves. At this early stage, the Court is satisfied that pending prosecutions may, by virtue of *Younger,* be enjoined only upon a showings of bad faith harassment by the state or abridgement of First Amendment freedoms in addition to a showing that the alleged injuries are immediate, real and irreparable. The latter only appear required by *Lake Carriers* for future prosecutions.

The Court is cognizant that, at least superficially, its interpretation of a "middle ground" appears to contradict the Supreme Court's statement in *Lake Carriers* that absent pending prosecution, "exercise of federal court jurisdiction ordinarily is appropriate if the conditions for declaratory or injunctive re-

lief are met." 406 U.S. at 498, 92 S.Ct. at 1749. This latter statement is amplified by Mr. Justice Brennan's concurrence in *Perez, supra,* 401 U.S. at 93, 91 S.Ct. at 695, which, as author of *Lake Carriers,* he cites. The language is instructive:

> When no state proceeding is pending and federal intervention is therefore appropriate, the federal court must decide which of the requested forms of relief should be granted. Ordinarily a declaratory judgment will be appropriate if the case-or-controversy requirements of Article III are met, if the narrow special factors warranting federal abstention are absent, and if the declaration will serve a useful purpose in resolving the dispute. See generally Zwickler v. Koota, *supra;* Golden v. Zwickler, supra [394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113]. This general rule carries out the unambiguous intention of Congress expressed in the Federal Declaratory Judgement Act and reflected in the committee reports, *supra.* The propriety of an injunction should be considered separately and in light of the traditional requirements of equity jurisprudence as applied to the protection of constitutional rights. See, e. g., Douglas v. City of Jeannette, *supra;* Ex parte Young, *supra;* Dombrowski v. Pfister, *supra;* Cameron v. Johnson, *supra* [390 U.S. 611, 88 S. Ct. 1335, 20 L.Ed.2d 182]; Zwickler v. Koota, *supra;* see also Hart v. Wechsler, *supra,* at 862–864.

Of further note, Mr. Justice Brennan states that the *Mackell* rule (Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L. Ed.2d 688, *supra*) with respect to declaratory judgments does not apply to future prosecutions:

> Taken together, the principles of *Ex parte Young* and *Dombrowski* establish that whether a particular case is appropriate for federal intervention depends both on whether a state proceeding is pending and on the ground asserted for intervention. Where the ground is bad faith harassment, intervention is justified whether or not a state prosecution is pending. Intervention in such cases does not interfere with the normal good-faith enforcement of state criminal law by constitutional means, and does not necessarily require a decision on the constitutionality of a state statute. It simply prevents particular unconstitutional use of the State's criminal law in bad faith against the federal plaintiff. Under Douglas v. City of Jeannette, *supra,* at 164 [of 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324] a person has no immunity from a state prosecution "brought lawfully and in good faith," but he is entitled to federal relief from a state prosecution which amounts to bad-faith harassment.

> The situation is different where the plaintiff seeks federal intervention on the ground that a state statute is unconstitutional, but does not allege facts showing bad-faith harassment. In cases of this sort, on whatever provision the claim of unconstitutionality rests, the justification for intervention is that individuals should be able to exercise their constitutional rights without running the risk of becoming lawbreakers. This justification applies with full force where there is a continuing live controversy and federal intervention is sought when there is no state prosecution in which the statute may be tested. However, where federal intervention is sought after a state prosecution has commenced and while it is pending, the interests protected by federal intervention must be weighed against the broad countervailing principles of federalism. The pending state proceedings ordinarily provides an existent, concrete opportunity to secure vindication of constitutional claims in the state courts, with ultimate review by this Court. In this situation collateral resort to a federal court will not speed up the resolution of the controversy since that will not come to an end in any event until the state litigation is concluded. Moreover, federal interven-

tion may disrupt the state proceedings through the issuance of necessary stays or the burdensome necessity for the parties to proceed in two courts simultaneously. Federal adjudication of the matters at issue in the state proceeding may otherwise be an unwarranted and unseemly duplication of the State's own adjudicative process. For these reasons, federal courts should not ordinarily intervene by way of either declaratory or injunctive relief in cases where a state court prosecution exists that began before the federal suit was filed, and the federal court plaintiff alleges only that the state statute being applied to him is unconstitutional. Cf. Brillhart v. Excess Ins. Co., 316 U.S. 491, 494–495 [62 S.Ct. 1173, 1175, 1176, 86 L.Ed. 1620] (1942); Wright, *supra*, at 205. The interests served by federal intervention in that context are plainly outweighed by the principles of comity essential to our federal system.

401 U.S. at 120, 91 S.Ct. at 694. (footnote omitted).

Nevertheless, Justice Brennan, in language that echoes the *Younger* emphasis on comity and is consistent with it, calls for judicial discretion in the disturbance of state criminal proceedings:

Of course, the grant or denial of a declaratory judgment is a matter of sound judicial discretion. The standards for the exercise of this discretion have been articulated in Aetna Life Ins. Co. v. Haworth, *supra*; Public Service Comm'n of Utah v. Wycoff Co., *supra* [344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291], and in Zwickler v. Koota, *supra*; see *supra*, at 120–126. Where a federal court is asked to declare the validity or invalidity of a

state statute, this discretion is to be exercised "in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the states, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the constitution."

401 U.S. at 129, 91 S.Ct. at 699.

The Court is satisfied that there is existent a "middle ground", whether by mandate of the relationship of *Younger* to *Lake Carriers* or by virtue of judicial discretion called for by Justice Brennan.[4]

These principles must therefore be applied to the present matter. Specifically, the issue consistent with the preceding discussion is whether future prosecutions of Rakes or members of his class present the threat of real, immediate and irreparable injury. The Court is satisfied that for these purposes the allegations of the amended complaint state such a threat.

Robert Rakes' continuing drinking problems and consequent anticipated brushes with the law are undisputed. Affiant Bernard Catlett claims to have been sentenced to jail 75 times within the past 5 years on alcoholism-related offenses; affiant Arthur Thurston, 45 times in 5 years; affiant Talmage Haas, 50 times in 5 years; affiant William Jones 22 times in 2 years; affiant James Johnson 35 times in 2 years; affiant Fred Bush 20 times in 2 years; affiant James Robey "approximately" 100 times in 5 years; affiant William Jorgan 50 times in 5 years; affiant William Smith, 5 times in 5 years; af-

---

4. Substantially this same issue was before the Court in Joseph v. House, 353 F. Supp. 367 (E.D.Va.1973), where the Court issued a preliminary injunction against the enforcement of city ordinances prohibiting the maintenance of bisexual massage parlors. Unblessed with briefs or arguments either strongly pursuing or adequately developing the *Younger* ques-

tion, the Court did not engage in the sort of inquiry here made. Upon reflection, however, the Court is convinced that, for purposes of a preliminary injunction, the plaintiffs in *Joseph* made a sufficient showing of real, immediate and irreparable harm to meet the "middle ground" criteria as herein enunciated.

fiant Juanita Waymere, 7 times in 4 years; affiant Thomas Finn 350 times in 27 years; each of these persons and those similarly situated are likely to go to jail in the future. The threat of prosecution is real and immediate. If in fact there is a constitutional right to a defense of alcoholism, and this right continues to be denied, the promise of continued incarceration for those who can properly invoke this alleged defense poses a threat of irreparable injury by virtue of unlawful confinement. For these reasons, *Younger* does not bar this claim, which the Court will proceed to upon the merits.[5]

III. Defense of Alcoholism

 Rakes' first claim has been finalized by the Supreme Court in Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968). In that case, Powell, appealed a conviction for public drunkenness. Upon trial, his counsel had argued that as appellant was "afflicted with the disease of chronic alcoholism," it would be cruel and unusual, in violation of the Eighth and Fourteenth Amendments, to punish him criminally for the offense charged. The trial judge had concluded that alcoholism was not a defense. Agreeing, the Supreme Court affirmed the conviction. Mr. Justice Marshall, on behalf of the Court, stated *inter alia* that alcoholism could not be asserted to rebut *mens rea*, and questioned whether the issue was of constitutional dimension:

> Traditional common-law concepts of personal accountability and essential considerations of federalism lead us to disagree with appellant. We are unable to conclude, on the state of this record or on the current state of medical knowledge, that chronic alcoholics in general, and Leroy Powell in particular, suffer from such an irresistible compulsion to drink and to get drunk in public that they are utterly unable to control their performance of either or both of these acts and thus cannot be deterred at all from public intoxication. And in any event this Court has never articulated a general constitutional doctrine of *mens rea*.
>
> We cannot cast aside the centuries-long evolution of the collection of interlocking and overlapping concepts which the common law has utilized to assess the moral accountability of an individual for his antisocial deeds. The doctrines of *actus reus, mens rea,* insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man. This process of adjustment has always been thought to be the province of the States.

392 U.S. at 535 et seq., 88 S.Ct. at 2155 (footnotes omitted).

Despite the unequivocal language of this case, plaintiffs urge the continuing vitality of Driver v. Hinant, 356 F.2d 761 (4th Cir. 1966), decided prior to Powell. In *Driver,* the United States Court of Appeals for the 4th Circuit held that a North Carolina public drunkenness statute could not be applied to chronic alcoholics. *Driver,* however, turned in essence upon the concept of mens rea specifically rejected in *Powell.*[6]

---

5. Counsel and the Court are in agreement that a three judge panel is not required here. See Rakes v. Coleman, 318 F.Supp. at 187 et seq.

6. The Court of Appeals stated, 356 F.2d at 764:

> This addiction—chronic alcoholism—is now almost universally accepted medically as a disease. The symptoms, as already noted, may appear as "disorder of behavior". Obviously, this includes appearances in public, as here, unwilled and ungovernable by the victim. When that is the conduct for which he is criminally accused, there can be no judgment of criminal conviction passed upon him. To do so would affront the Eighth Amendment, as cruel and unusual punishment in branding him a criminal, irrespective of consequent detention or fine.

(Footnotes omitted)

Accordingly, the Court concludes that Powell overrules Driver. Plaintiffs urge also that Easter v. District of Columbia, 124 U.S.App.D.C. 33, 361 F.2d 50 (1966) retains validity. That case reached the same result as Driver, but on the basis of a Congressional Act, 61 Stat. 744, c. 472 (1947) providing for treatment of alcoholics in the District. In that respect *Easter* may not be overruled by *Powell,* see Watson v. United States, 141 U.S.App.D.C. 335, 439 F.2d 442 (1970). Those considerations are irrelevant here, however.

Plaintiffs urge further that the Powell decision stemmed in part from what the Supreme Court stated was its refusal to fashion a constitutional rule on the basis of what it found to be an inadequate record. It is argued that this impliedly leaves open to other litigants the pursuit of this claim upon fallen record. While the Court agrees, it also concludes that the record here is similarly inadequate. Additionally the Court's opinion in *Powell* suggests that an adequate record upon which proper legal conclusions can be drawn may well be impossible to present upon the basis of current medical knowledge, 392 U.S. at 522, 88 S.Ct. 2145. While that suggestion is not binding upon the Court with respect to the validity of a cause of action upon this theory, the Court interprets it as a mandate to consider much more than is presented by these plaintiffs. Accordingly, Rakes' first claim shall be dismissed.

## IV. Rehabilitation

 Rakes' second claim, that it is cruel and unusual punishment to incarcerate an alcoholic without rehabilitation, does not appear to be affected by *Powell.* Nevertheless, the Court concludes that this record is wholly inadequate to support the relief sought.

Counsel are admonished that the interminable delays in the prosecution of this matter will no longer be tolerated. The issues and justice preclude the Court from proceeding further solely on the basis of oral argument heard more than one year ago. Accordingly, plaintiffs' motion to reopen the record will be granted with respect to the second claim. Counsel will be directed to appear before the Court for a pretrial conference at such time as is stated in an order accompanying this memorandum.

An order consistent with this memorandum shall issue.