991 F.2d 787
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
v.
Mary Ann M. CANTU, Individually and as Personal
Representative of Merardo Cantu, Deceased,
Plaintiff-Appellee,
JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant-Appellant.
 No. 92-1778.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 1, 1993
Decided: April 16, 1993
 
 Appeal from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (CA-90-2551-2-18)
 Thomas S. Tisdale, Jr., YOUNG, CLEMENT, RIVERS & TISDALE, for Appellant.
 Robert Buford Wallace, WALLACE & TINKLER, for Appellee.
 Stephen P. Groves, YOUNG, CLEMENT, RIVERS & TISDALE, Charleston, for Appellant.
 Paul E. Tinkler, WALLACE & TINKLER, Peter F. Them, II, Summerville, for Appellee.
 D.S.C.
 AFFIRMED.
 Before WILKINSON, Circuit Judge, POTTER, United States District Judge for the Western District of North Carolina, sitting by designation, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Defendant-appellant appeals from a jury verdict in favor of the plaintiff-appellee. Appellant argues that the district court improperly admitted hearsay evidence, erroneously refused to use the appellant's proffered jury instructions, and wrongfully failed to grant the appellant's motions for a directed verdict, a judgment notwithstanding the verdict, or a new trial. Appellant also contends that the appellee was barred from recovering on her claims because of material misrepresentations on an insurance application. Because we find no error in the proceedings below, we affirm the jury's verdict.
 
 
 2
 * Appellee Mary Ann Cantu met her husband, Merardo Cantu, Jr. ("Merardo"), while they were serving in the United States Navy in 1981. The Cantus were married in 1985. They each obtained term life insurance in 1986 through the Armed Forces Relief and Benefit Association ("AFRBA") in the amount of $60,000, and they named each other as the beneficiary of their policies. AFRBA is a non-profit association providing life insurance to members of the military; its policies are underwritten by appellant John Hancock Mutual Life Insurance Company.
 
 
 3
 The Cantus experienced personal and marital difficulties in 1988. The parties separated in March of that year, and Merardo was arrested for driving under the influence of alcohol in April. Appellee, a substance abuse counsellor, encouraged Merardo to enroll in a Navy alcohol abuse program. As part of the program, Merardo was required to attend counselling sessions and take daily doses of a prescription drug called Antabuse. During this same period, the Cantus unsuccessfully attempted to reconcile their marriage. They obtained an official order of separation from a state domestic court on July 19, 1988.
 
 
 4
 Sometime after June 6, 1988, the appellee received a solicitation from AFRBA for the purchase of additional life insurance benefits. After consulting with her attorney, the appellee elected to purchase additional coverage for Merardo's life. Appellee was concerned about the financial security of herself and her dependent daughter during the domestic turmoil surrounding her marriage to Merardo. Appellee testified at trial that Merardo verbally consented to the purchase of additional insurance on his life, with the understanding that the appellee pay the premiums. Appellee also testified that Merardo agreed to name the appellee as the beneficiary of the additional benefits.
 
 
 5
 Appellee completed an application for $240,000 of additional coverage on Merardo's life on July 20, 1988. One of the clauses on the application was a health certification relative to the health of the person whose life was to be insured.
 
 
 6
 I CERTIFY THAT: I AND MY DEPENDENTS (IF APPLYING FOR DEPENDENT COVERAGE) ARE IN GOOD HEALTH and not under medical care, nor ever had any major illness, injury or disease, i.e., heart disease, cancer, etc., nor have I/we ever been told that I/we had or ever been treated for Acquired Immune Deficiency (AIDS) or AIDS related complex, nor been confined to a hospital during the past five years.
 
 
 7
 Appellee completed the application for Merardo, but she did not reveal that Merardo was enrolled in the Navy's alcohol abuse program or that he was taking Antabuse.
 
 
 8
 Appellee also signed Merardo's name without an indication that she was doing so on his behalf. However, at the time of completing the application, the appellee possessed a power of attorney from Merardo which permitted her to sign contracts in Merardo's name. Nothing in the insurance application prohibited a spouse from signing on behalf of her spouse when authorized to do so by a power of attorney. The application was mailed in August 1988 and paid with a check dated July 20, 1988. The application was approved and the additional coverage became effective on September 12, 1988.
 
 
 9
 Merardo moved to Corpus Christi, Texas in August 1988 to care for his dying mother. His mother was treated for pain with a selfadministered intravenous morphine pump. Merardo and his sister regularly changed the morphine bags that were needed for the pump. Merardo continued caring for his mother until late November 1988.
 
 
 10
 On November 22, 1988, a friend visited Merardo in Texas. Merardo and his friend drank large amounts of alcohol, and Merardo also attempted to inject morphine into his body. Merardo was found dead the next morning with a hypodermic syringe in his arm and a partially empty morphine bag laying nearby on the floor. At the time of his death, Merardo had a blood alcohol level of 0.160%. A medical examiner determined that the cause of death was a morphine overdose.
 
 
 11
 Appellee reported Merardo's death to the appellant on December 6, 1988. Because Merardo died only a few weeks after the appellee purchased $240,000 of additional insurance coverage for his life, the appellant investigated Merardo's death before paying the additional benefits. Appellant discovered for the first time that Merardo had been enrolled in an alcohol abuse program and was taking Antabuse. Because of this, the appellant refused to pay the additional $240,000 benefit to the appellee. As the appellant stated in a May 11, 1989 letter, "Had this information been admitted to us at the time of the insurance application, we would not have approved coverage."
 
 
 12
 Appellee filed suit against the appellant on September 7, 1990, alleging breach of the life insurance contract. Appellee testified at trial that Merardo verbally consented to the purchase of the additional insurance and also agreed to name the appellee as beneficiary of the additional benefits. Appellant argued that the appellee was not entitled to the additional benefits, because the appellee engaged in material misrepresentations on the application for the benefits. A jury returned a verdict in favor of the appellee in the amount of $240,000. The district court denied the appellant's motions for a directed verdict, a judgment notwithstanding the trial, and a new trial. Appellant filed a notice of appeal to this court on June 30, 1992.
 
 II
 
 13
 Appellant first argues that the appellee's testimony concerning Merardo's verbal authorization of the purchase of additional life insurance and his consent to the appellee being the beneficiary of the insurance was inadmissible hearsay evidence. The district court found that the evidence was not hearsay under Federal Rule of Evidence 801(c). Alternatively, the district court found that the evidence was admissible under the exception for statements showing state of mind under Federal Rule of Evidence 803(3).
 
 
 14
 "[W]e review the admission of hearsay statements for abuse of discretion." United States v. Ellis, 951 F.2d 580, 582 (4th Cir. 1991), cert. denied, 112 S. Ct. 3030 (1992). We find that the district court's admission of the appellee's testimony under Rule 803(3) was not an abuse of discretion. Appellee's testimony described Merardo's then existing state of mind, specifically his approval of purchasing additional life insurance coverage and his intent to name the appellee as the beneficiary. As a result, the testimony fell squarely within the express language of Rule 803(3), which admits hearsay "statement[s] of the declarant's then existing state of mind ... (such as intent [or] plan)."
 
 
 15
 Appellant's second argument is that the application for additional insurance coverage on Merardo's life required Merardo's actual signature. As a result, the appellant argues that the appellee was not allowed to sign Merardo's name nor was she permitted to certify the state of his health. To the extent the appellant is arguing that the jury improperly found as a fact that the appellee was permitted to sign the application on Merardo's behalf, we may reverse only if the jury's finding was clearly erroneous. See Ingram v. Acands, Inc., 977 F.2d 1332, 1340 (9th Cir. 1992). To the extent the appellant is arguing that, as a matter of law, the appellee was not allowed to sign Merardo's name, we provide de novo review. See First Fed. Sav. & Loan Ass'n v. Chrysler Credit, 981 F.2d 127, 131 (4th Cir. 1992).
 
 
 16
 We find that the appellant's argument must be rejected. We do not believe that a factual finding that the appellee was permitted to sign Merardo's name was clearly erroneous. Concededly, the appellee and Merardo were separated at the time the appellee completed the application. However, the record demonstrates that the appellee was acting under an express authorization from Merardo as well as a power of attorney executed by Merardo. Also, the insurance application itself did not require the personal signature of the prospective insured.
 
 
 17
 We further find that, as a matter of law, the appellee was permitted to sign Merardo's name and certify his health. The parties provide a plethora of case citations, but none of them stand for the proposition that a spouse acting under verbal assent and a written power of attorney is prohibited from signing a life insurance application in her spouse's name and certifying the state of his health. Moreover, we see no reason to establish such a rule in the present case. As a result, we find that the appellant's argument must be rejected.
 
 
 18
 Appellant's third argument is that the district court improperly failed to use certain jury instructions concerning alcoholism which were submitted by the appellant. The instructions stated that alcoholism was a recognized sickness and disease; that failure to disclose a history of alcohol abuse on a life insurance application was a material misrepresentation; that an insurer's liability cannot be based on a third party's perception of an insured's health; that misrepresentations about alcohol use materially increase the risk presented by a life insurance policy; and that Antabuse was a physician-prescribed drug used to control alcohol abuse.
 
 
 19
 A district court's decision whether to use jury instructions submitted by a party is reviewed only for abuse of discretion; however, an attack on the legal correctness of the instructions as given is subject to de novo review. Trimed, Inc. v. Sherwood Medical, 977 F.2d 885, 888, 890 (4th Cir. 1992). Upon review of the jury instructions given by the district court, we find that the court did not abuse its discretion by refusing to use the appellant's proffered instructions regarding alcoholism. We also find that the content of the instructions was legally correct. The instructions given by the district court completely and properly addressed the elements of the appellee's claim. We find no error.
 
 
 20
 Appellant's final contention is that the district court improperly refused to grant the appellant's motions for a directed verdict, a judgment notwithstanding the verdict, or a new trial. According to the appellant, the overwhelming weight of the evidence at trial demonstrated that the appellee made material misrepresentations when she completed the application for additional insurance benefits on Merardo's life.
 
 
 21
 "The denial of [appellant's] motions for directed verdict and judgment [notwithstanding the verdict] cannot be disturbed unless, without weighing the evidence or assessing witness credibility, we conclude that reasonable people could have returned a verdict only for [appellants]." Cooper v. Dyke, 814 F.2d 941, 944 (4th Cir. 1987). "A district court can exercise its discretion to grant a new trial if the verdict ... is against the weight of the evidence.... The district court's ruling will not be reversed unless a clear abuse of discretion appears." Taylor v. Home Ins. Co., 777 F.2d 849, 854 (4th Cir. 1985), cert. denied, 476 U.S. 1142 (1986).
 
 
 22
 Because the district court's subject matter jurisdiction was based on diversity of citizenship, the substantive law of the district court's forum state, South Carolina, governed the appellee's claim. See Fried v. North River Ins. Co., 710 F.2d 1022, 1024 (4th Cir. 1983), citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941) ("In [a] diversity case [the court] appl[ies] the law of the ... forum"). Under South Carolina law, an insurance company sued for breach of contract has an affirmative defense of material misrepresentation if the company establishes that the insurance was obtained with false statements. Specifically, the company must prove:
 
 
 23
 (1) that the statements complained of were untrue; (2) that their falsity was known to the applicant; (3) that they were material to the risk; (4) that the insurer relied on the statements; and (5) that they were made with the intent to deceive and defraud the company.
 
 
 24
 Carroll v. Jackson Nat'l Life Ins. Co., S.C., 414 S.E.2d 777, 777-78 (1992). Appellant's argument is that the appellee materially misrepresented Merardo's alcohol abuse and treatment when she executed the application for an additional $240,000 of benefits on Merardo's life.
 
 
 25
 We acknowledge that several reported decisions declare that alcoholism is an illness or disease. See, e.g., Driver v. Hinnant, 356 F.2d 761, 764 (4th Cir. 1966) ("This addiction-chronic alcoholism-is now almost universally accepted medically as a disease."). However, these decisions establish only that Merardo's alcohol abuse was a material risk. Appellant must also demonstrate that the appellee omitted the alcohol abuse information with the intent to deceive and defraud the appellant. Reviewing the evidence presented at trial, we find that a reasonable juror could conclude that the appellee did not act with such an intent. Moreover, we find that such a conclusion was not contrary to the clear weight of the evidence.
 
 
 26
 The evidence presented at trial showed that the appellee increased the coverage on Merardo's life upon the advice of her attorney as an added measure of financial security during the appellee's divorce from Merardo. Appellee also increased the coverage on her own life and on the life of her dependent daughter at the time she increased coverage on Merardo's life. The record is devoid of even the slightest inference that the appellee knew of Merardo's impending death or that the appellee was involved in the circumstances leading up to his death.
 
 
 27
 In addition, the record contains no indication that the appellee believed the insurance application would be rejected by the appellant if the appellee disclosed Merardo's abuse of alcohol. The application form requested information on "major illness, injury or disease, i.e., heart disease, cancer, etc.," but it made no mention of alcohol abuse. Appellant argues that intent to defraud may be inferred from surrounding circumstances, but we find that such an argument was properly left to the jury. In sum, we find no error in the district court's denial of the appellant's motions for a directed verdict, judgment notwithstanding the verdict, and a new trial.
 
 III
 
 28
 Because we reject each of the appellant's arguments, we hold that the jury's verdict in favor of the appellee must be affirmed.
 
 AFFIRMED