THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PATRICK JOHN JOSEPH MYERS, Appellant.

Second Department, May 15, 1972.

*Milton M. Levin* for appellant. *Thomas J. Mackell, District Attorney* (*Anthony J. Piacentini* of counsel), for respondent.

HOPKINS, Acting P. J. The defendant pleaded guilty under two indictments to the crimes of attempted sale of a dangerous drug in the third degree, criminal possession of a dangerous drug in the third degree and criminal possession of a hypodermic instrument. The question before us is whether his initial arrest for public intoxication (Penal Law, § 240.40) and the search of his person incident to the arrest, whereby the contraband was found, were void because the statute is unconstitutional. Before pleading guilty the defendant moved to suppress the contraband and, after a hearing, the motion was denied. We concur with the determination of the Criminal Term.

The principal point of the defendant's argument is that section 240.40 of the Penal Law is unconstitutional because it violates due process, representing an abridgment of the proper exercise of police power by the State. That section makes public intoxication a violation (cf. Penal Law, § 10.00, subd. 3) and reads as follows:[1] " A person is guilty of public intoxication when he appears in a public place under the influence of alcohol, narcotics or other drug to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity."

Before discussing the defendant's claim, we turn to the circumstances of his arrest, for the constitutionality of a statute cannot be measured in a vacuum. Two police officers,

---

1. This section replaced section 1221 of the former Penal Law which simply made intoxication in a public place an offense. For a construction of the latter provisions, see *People* v. *Weaver* (188 App. Div. 395).

cruising in a patrol car in the evening, saw the defendant walking erratically on the sidewalk. The defendant, so the officers testified, was holding his sides and staggering. Stopping their car, they accosted him to ascertain his name, his residence and his destination. He did not reply. The police officers noticed that his eyes were running and they came to the conclusion that he was under the influence of narcotics and a danger to himself. He was not known to the officers and they testified that there were no other persons in the vicinity and that nothing indicated to them that the defendant was dangerous to others.

The defendant was arrested for public intoxication and searched. Found on his person were two envelopes containing heroin, a rubber hose, a bottle cap, a syringe and a needle. He was booked at the precinct house for public intoxication and for the crimes of criminally selling a dangerous drug and criminal possession of a dangerous drug and a hypodermic needle. He was then taken to a hospital, where he received medical treatment and methadone.

The essence of the defendant's argument against the constitutionality of the statute is that, in this setting, it unreasonably creates a crime out of behavior which does not affect adversely the rights and interests of others or which cannot be said to be tied to the prevention of crime and the maintenance of law and order. The defendant emphasizes the fact that his conduct, observed by the police officers, neither interfered with any other person nor displayed mannerisms dangerous to himself. The statute, he asserts, is thus directed toward his status and punishes him not for criminal activity but for a condition suffered by him.

Both courts and legal commentators have been concerned recently with the constitutionality of statutes which deal with the criminality of personal condition or the status of an individual (e.g. *Fenster* v. *Leary,* 20 N Y 2d 309; *People* v. *Pagnotta,* 25 N Y 2d 333; *Robinson* v. *California,* 370 U. S. 660; *Powell* v. *Texas,* 392 U. S. 514; *Driver* v. *Hinnant,* 356 F. 2d 761 [4th Cir., 1966]; *Easter* v. *District of Columbia,* 361 F. 2d 50 [D. C. Cir., 1966]; *Alcoholism, Public Intoxication and the Law,* 2 Col. J. of Law and Social Problems 109; note, *Driver* to *Easter* to *Powell*: Recognition of the Defense of Involuntary Intoxication, 22 Rutgers L. Rev. 103; Fingarette, *The Perils of Powell*: In Search of a Factual Foundation for the "Disease Concept of Alcoholism", 83 Harv. L. Rev. 793; Kaplan, *Powell* v. *Texas*: Alcoholics Anomalous, Chapter I or,

Chronic Alcoholism and Criminal Responsibility, 5 Crim. L. Bull. 191; Murtagh, Status Offenses and Due Process of Law, 36 Fordham L. Rev. 51). What primarily engaged their concern is the "fairness" of a statute—the core of due process —which stamps a person as a criminal who has not exhibited conduct which is hostile to the community.

Thus in *Fenster* v. *Leary* (20 N Y 2d 309, *supra*), the Court of Appeals struck down a statute by which "'a person who, not having visible means to maintain himself  *  *  *  without employment,'" (p. 311) might be charged with vagrancy; and the Supreme Court of the United States held likewise invalid a statute which inculpated a person who was addicted to narcotics (*Robinson* v. *California,* 370 U. S. 660, *supra*). Closer to the issue raised on this appeal are *Driver* v. *Hinnant* (356 F. 2d 761 [4th Cir., 1966], *supra*)[2] and *Easter* v. *District of Columbia* (361 F. 2d 50 [D. C. Cir., 1966], *supra*)[3], both of which held that an alcoholic may not be punished for his public intoxication.

The continuing vitality of *Driver* and *Easter* has been severely shaken by the more recent decision of the Supreme Court in *Powell* v. *Texas* (392 U. S. 514, *supra*)[4]. The court distinguished its holding in *Robinson* by observing that the defendant was convicted not for being a chronic alcoholic, but for being drunk in public on a particular occasion (*id.,* p. 532). Somewhat in the same sense the decision in *Fenster* was explained in the later opinion of Judge JASEN in *People* v. *Pagnotta* (25 N Y 2d 333, *supra*), which held valid subdivision 5 of section 1533 of the former Penal Law, which provided that it was a misdemeanor for "a person  *  *  *  [to] loiter[s] about any stairway, staircase  *  *  *  roof  *  *  *  of a building for the purpose of unlawfully using or possessing any narcotic drug." This statute, the opinion ruled, was intended to "prevent generally idle and dissolute persons engaged in the unlawful traffic of narcotics, from drawing together for that purpose in places frequented by other citizens, thereby endangering public health, morals and

2. The North Carolina statute in that case made it a misdemeanor for "any person  *  *  *  [to] be found drunk or intoxicated on the public highway, or at any public place or meeting" (N. C. Gen. Stat., § 14-335 [1965]).

3. The statute there read that "no person shall  *  *  *  drink any alcoholic beverage  *  *  *  [or] be drunk or intoxicated in any street, alley, park" (D. C. Code Ann., § 25-128, subd. [a] [1966]).

4. The Texas statute provided that it was an offense for a person to be "drunk or be found in a state of intoxication in any public place" (Texas Penal Code, art. 477 [1952]).

tranquility '' (*id.*, p. 338). On the other hand, it was said that the statute in *Fenster* had no such discernible purpose to stop an interference with the rights of others or the commission of crime (*id.*, pp. 337–338).

Thus, the statute under consideration in each case must be examined to determine whether the effect of its stricture bears a direct relationship to the achievement of a legitimate purpose advancing public morality, health and order. Within the framework of that test, we think that section 240.40 of the Penal Law surmounts the claim of unconstitutionality.

Unlike the Texas statute in *Powell*, which merely denounced the state of intoxication in public as a crime, the New York statute adds to the requirement that the accused appear in public '' under the influence of alcohol, narcotics or other drug '' the elements that it also appear that '' he may endanger himself or others or property, or annoy persons in his vicinity.'' The statute, in short, does not exact punishment for merely a condition, but for a condition from which it may fairly be expected that a resulting danger or annoyance from the accused's conduct will arise. There is, accordingly, a direct relation between the conduct condemned by the statute and the legitimate interest which the community has in preserving the public order.

The defendant's assault on the constitutionality of the statute, in addition to the claim of a violation of due process, invokes the Eighth Amendment's prohibition against cruel and inhuman treatment, which now limits the States' power to define crime (*Robinson* v. *California,* 370 U. S. 660, *supra*; cf. *Trop* v. *Dulles,* 356 U. S. 86). But the same values which sustained the validity of the statute against the contention of a breach of due process are also present in weighing the mandate of the Eighth Amendment. It may be cruel and inhuman punishment to direct sanctions against chronic intoxication or drug addiction, but that is not the thrust of the statute under review, which punishes the behavior of the individual as a result of his intoxication (cf. *Powell* v. *Texas,* 392 U. S. 514, 532, *supra*).

Alcoholism and drug addiction, by themselves are conditions which properly call for the intervention of society in devising means for their alleviation and control. New York has recognized such a need and enacted legislation which is aimed toward accomplishing this objective (Mental Hygiene Law, arts. 9, 10; cf. *Matter of James,* 22 N Y 2d 545; *Matter of Spadafora,* 54 Misc 2d 123, affd. 29 A D 2d 742). But the

rightful concern shown by the State for mitigating the problems which alcoholism and drug addiction generate does not by that token mean that the occasional nuisance created by persons suffering from the influence of alcohol and narcotics may not be curbed by the criminal process (cf. *People* v. *Hook*, 3 N Y 2d 485). Drunkenness and narcotic addiction of a degree capable of potential injury are nonetheless a legitimate subject of State suppression by sanctions, though equally a cause for the expression of State solicitude through other less drastic approaches to prevent their spread.

Finally, the defendant contends that the statute allows him to be punished for conduct which has not occurred, but may occur; this, he says, is equivalent to punishment on suspicion. It is true that the arrest depends to some extent on the subjective judgment of the arresting officers — that is, the judgment that the intoxication of the accused is of such a degree that it leads to the conclusion that future behavior of the accused will endanger or annoy others. But the test of whether the exercise of judgment was right, as in other areas of the law, is the reasonableness of the judgment in the light of the circumstances. A man may be held for an attempt to commit a crime even though whether the ultimate act would have been successful is conjectural (cf. *People* v. *Jelke*, 1 N Y 2d 321, 329–331). The judgment in that instance is whether the attempt is close to the attainment of the criminal end in view (*People* v. *Werblow*, 241 N. Y. 55, 61). Thus, it must be left to the judgment of the arresting officers, subject to the time-honored procedure of trial and cross-examination, to determine whether the action of the accused causes the reasonable belief that the latter may create peril or annoyance to himself or to others.

The defendant argues, in the context of this case, that the arresting officers could not have held such a belief with reason. He indicates that their testimony reflects their conclusion that the defendant at the time was not behaving in a way to endanger others; and that, indeed, there were no persons in his vicinity. Common experience teaches us, however, that individuals under the influence of drugs are unpredictable; and there is no guarantee that one displaying the signs of narcotic use will not injure himself, as the officers here testified they believed. Upon reaching the conclusion that the defendant appeared in the circumstances described in the statute, the officers were entirely justified in arresting him and then under-

taking a search of his person in order to safeguard both himself and themselves.

It accents the obvious, of course, to point out that the defendant was not convicted for public intoxication; both the arrest and the subsequent search hinge on the existence of probable cause — the practical considerations of everyday life on which reasonable men make decisions (*People* v. *Lombardi,* 18 A D 2d 177, 180, affd. 13 N Y 2d 1014). We think that the circumstances observed by the officers justified the defendant's arrest and that the Criminal Term was correct in denying his motion to suppress the evidence found after the arrest.

The judgments of conviction should be affirmed.

SHAPIRO, CHRIST, BRENNAN and BENJAMIN, JJ., concur.

Two judgments of the Supreme Court, Queens County, both rendered March 25, 1971, affirmed.