**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Roger NYEMASTER, Defendant–Appellant.**

No. 96–10328.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1997.

Decided June 17, 1997.

Kevin P. Rooney, Assistant United States Attorney, Fresno, CA, for plaintiff-appellee.

Linda C. Harter, Assistant Federal Public Defender, Fresno, CA, for defendant-appellant.

Before: PREGERSON, FERGUSON, and KLEINFELD, Circuit Judges.

FERGUSON, Circuit Judge:

Roger Nyemaster appeals his conviction for being under the influence of alcohol in violation of 36 C.F.R. § 2.35(c). Nyemaster claims that the district court erred by convicting him based on insufficient evidence. Nyemaster further claims that 36 C.F.R. § 2.35(c) is impermissibly vague. We hold that Nyemaster's conviction was based on insufficient evidence and reverse the decision of the district court.

I.

On January 17, 1996, Nyemaster parked his car in site 41 of the Lower Pines Campground in Yosemite National Park and spent the night in his car. The next morning, he

arose just after sunrise and went on a six mile hike. Afterwards, he purchased food, orange juice and gin at the village store. At approximately 11:30 a.m., he returned to his campsite, went to a nearby picnic table, ate lunch, poured a mixture of gin and orange juice into a coffee mug and drank it. Nyemaster characterized this drink as a "double". He then poured a second "double" and began reading.

Two hours later, around 2:00 p.m., it started to sprinkle. Not wanting to get wet, Nyemaster put his leftover food and drink into his two-door 1980 Toyota and sat in the driver's seat with his book. He did not finish his second drink. His car keys were in his pocket.

Nyemaster's car was the only shelter nearby, other than the bathroom. The windows of the car were rolled up and covered with shades. Nyemaster had removed the front passenger side seat and installed a padded board that extended from the front seat to the back seat. He used the board as a bed and had slept on it the previous night with a sleeping bag designed for winter camping. Nyemaster was dressed warmly and had camping gear stored in his car.

Nyemaster fell asleep while sitting in the driver's seat of his car. He was awakened when Ranger Brent Taylor knocked on the driver side window at approximately 2:45 p.m. that afternoon. Ranger Taylor testified that Nyemaster appeared to be sleeping and that he knocked four times before Nyemaster realized someone was at the window. Ranger Taylor noticed a strong smell of alcohol after Nyemaster rolled down the window. Ranger Taylor testified that there was "nothing really out of the ordinary" in Nyemaster's appearance although he noticed bloodshot eyes, slurred speech, and that it took Nyemaster about two minutes to locate his driver's license in his wallet.

Nyemaster admitted to Ranger Taylor that he had been drinking and showed Ranger Taylor a bottle of gin that was a fourth full. However, the government failed to present evidence establishing the size of the bottle. Furthermore, no field sobriety test was administered to Nyemaster and the breathalyzer test was inconclusive.

Nevertheless, Ranger Taylor concluded that Nyemaster was under the influence of alcohol and that he might be a danger to himself or others because he might drive away, drown in the river that was 20 yards away, or have difficulty crossing a nearby road. Ranger Taylor testified that he would have the same concerns about anyone in the campground after they had even one drink. Although Nyemaster offered Ranger Taylor his keys to alleviate concerns that he might drive, Ranger Taylor did not accept the keys. Instead, Ranger Taylor left the campsite and returned approximately five to ten minutes later with Ranger Keith Lober.

Ranger Lober testified that the weather that day had been cold and that it was spitting snow. Ranger Lober stated that Nyemaster exhibited the same signs of alcohol intoxication mentioned by Ranger Taylor: slurred speech, bloodshot eyes and the strong smell of alcohol. These signs, coupled with the fact that Nyemaster was seated in the driver's seat with the car keys in his pocket, led Ranger Lober also to conclude that Nyemaster was a danger primarily because he might drive off in the vehicle. However, Ranger Lober further testified that Nyemaster seemed oriented, answered questions and cooperated with the Rangers. Nyemaster offered to turn his keys over to the Rangers a second time as insurance that he would not drive off. However, they again refused to accept them.

Nyemaster was arrested, taken to jail, convicted for violating 36 C.F.R. 2.35(c) and sentenced to a fine of $125.00.

## II.

A challenge to the sufficiency of the evidence is reviewed under "a highly deferential standard." *U.S. v. McCourt*, 925 F.2d 1229, 1231 (9th Cir.1991). A court must view the evidence in the light most favorable to the government and affirm if any rational factfinder could find the essential elements of the crime beyond a reasonable doubt. *Id.; U.S. v. Adler*, 879 F.2d 491, 495 (9th Cir.1988) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)).

## III.

■ The issue is whether substantial evidence was introduced showing Nyemaster was so intoxicated that he constituted a danger to himself, others or park property.

The regulation Nyemaster was convicted of violating provides:

Presence in a park area when under the influence of alcohol or a controlled substance to a degree that may endanger oneself or another person, or damage property or park resources, is prohibited.

36 C.F.R. § 2.35(c) (1996).

The only published case which interprets this regulation is *U.S. v. Hogue,* 752 F.2d 1503 (9th Cir.1985). In that case, Ms. Hogue had parked her car in a remote area of Lake Mead Recreation Area, a national park, to sleep off the effects of beer she had consumed earlier in the evening. *Id.* at 1504. She was discovered by park rangers who awakened her, administered a sobriety test, determined that she was intoxicated, and arrested her. *Id.* Ms. Hogue was convicted under a predecessor provision of 36 C.F.R. 2.35(c), and this court affirmed the conviction. *Id.*

In *Hogue,* this court said the "evident purpose of this regulation is to prohibit the creation of *unreasonable and unnecessary risks* in federal park lands." *Id.* (emphasis added). The court concluded that Ms. Hogue's abilities were substantially impaired from alcohol and that "her physical abilities were so impaired that she might have endangered herself or other persons." *Id.* at 1505. In such a vulnerable state, the court observed that Ms. Hogue could not defend herself against humans or animals or take care of herself had she to leave her car for any reason. *Id.* The court also noted

The record does not indicate how Hogue arrived at the Lake Mead Recreation Area or what her condition was at the time. Even on the plausible assumption, however, that she made a conscious decision not to drive, thereby avoiding the commission of a more serious offense, it does not follow that she is immune to prosecution. The law does not exonerate one who forces an election between evils and chooses the lesser of the two.

*Id.*

While the basic facts of this case are similar to *Hogue,* Nyemaster's vulnerability to danger and the circumstances surrounding his intoxication are significantly different. Ms. Hogue was found asleep in a national park at night with her car windows down, she was parked in a remote area of the park, she was not within a designated campground or shelter, twelve empty beer cans were found in her car, and her clothing and high heeled shoes were not appropriate for camping. *Hogue,* 752 F.2d at 1504–1505. The fact that she was unequipped for camping and had twelve empty beer cans in her car raise the strong presumption that she had been drinking before arriving to the park.

In contrast, Nyemaster was arrested in the afternoon, he was in a designated campsite near other campsites, his car was used only for shelter, he was properly attired for the weather, he had camping gear, his window was rolled up. In short, unlike Ms. Hogue, Nyemaster was a camper.

Furthermore, he was oriented and cooperative, he understood the Rangers' questions and replied coherently, he realized the danger of driving in his condition and repeatedly offered his keys and driver's license to the Rangers, and he remained in his car at the campsite even though Nyemaster had an opportunity to drive away when Ranger Taylor left to contact Ranger Lober.

As a result of the different circumstances, the dangers facing Ms. Hogue were markedly different from those facing Nyemaster. The court in *Hogue* noted that Ms. Hogue, in her drunken state, could not safely escape potential perils and that the Rangers "would have acted irresponsibly had they left her unattended." *Id.* at 1505. In contrast, Rangers Taylor and Lober were concerned about risks that any camper in the park might encounter after consuming just one drink.

Furthermore, because no evidence was introduced as to whether the 3/4 empty gin bottle was a miniature, half pint, pint, fifth, or some other size, the trier of fact could not

rationally conclude that Nyemaster was intoxicated. In the absence of evidence establishing the extent of Nyemaster's intoxication, we cannot confidently conclude that Nyemaster was so intoxicated to come under the purview of § 2.35(c).

## IV.

■ Nyemaster claims that the word "may" renders 36 C.F.R. § 2.35(c) vague to the extent that he did not have fair notice that his conduct was prohibited.

We will not review this claim because Nyemaster raises it for the first time on appeal. *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1488 (9th Cir.1995); *Crawford v. Lungren,* 96 F.3d 380, 389 n. 6 (9th Cir. 1996).

## V.

There was a lack of substantial evidence to convict Nyemaster for being under the influence of alcohol in violation of 36 C.F.R. § 2.35(c). Therefore, we REVERSE.