## UNITED STATES

v.

### Terrence T. REGAN.

### No. CRIMA9910219–WGY.

United States District Court,
D. Massachusetts.

April 19, 2000.

Gregory V. Sullivan, Malloy & Sullivan, Hingham, MA, for Defendant.

Gregory Moffatt, U.S. Attorney, Boston, MA, for U.S.

### MEMORANDUM AND ORDER

YOUNG, Chief Judge.

Following a bench trial before our Chief Magistrate Judge, Terrence T. Regan ("Regan") was found guilty of violating a federal regulation that prohibits presence in a national park while under the influence of alcohol to a degree that may endanger oneself, another person, or park property. See 36 C.F.R. § 2.35(c) (1999) (the "Regulation").[1] Regan challenges his conviction on two grounds. First, he argues that the verdict and judgment were not supported by the evidence. Second, Regan claims that the Regulation is unconstitutionally vague.

### I. SUFFICIENCY OF THE EVIDENCE

#### A. Standard of Review

As the first basis for appealing his conviction, Regan asserts that "[t]he evidence adduced at trial cannot support a conviction." Appellant Br. at 6. In considering the sufficiency of a guilty verdict, a District Court sitting as an appellate court must "review the guilty verdict to determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt.'" United States v. Salimonu, 182 F.3d 63, 74 (1st Cir.1999) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 [1979]). Moreover, when reviewing a bench trial, the Court is "not free to reject [e]ither findings of fact [of the trial judge] or the conclusions he draws therefrom unless they are clearly erroneous, that is, 'unless, on the whole of the record, [the Court] form[s] a strong, unyielding belief that a mistake has been made.'" Foster v. Dalton, 71 F.3d 52, 55 (1st Cir.1995) (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 [1st Cir.1990]). Under this "clear error" standard, the appellant bears a "heavy burden." United States v. Woodward, 149 F.3d 46, 56 (1st Cir.1998).

#### B. Factual Findings

Regan's trial was held in South Wellfleet, Massachusetts, on September 18, 1998. The entire trial consisted of testimony by Robert Grant ("Ranger Grant" or "Grant"), a park ranger stationed at the Cape Cod National Seashore (the "Seashore"), and closing arguments by counsel. At the conclusion of the trial, Chief Magistrate Judge Collings took the issue under advisement and subsequently issued a written opinion on December 14, 1998 finding Regan guilty of violating the Regulation. See United States v. Regan, No. P251427, slip. op. (D.Mass. Dec. 14, 1998) (Collings, C.M.J.).

According to the court, just before 2:30 a.m. on July 5, 1998, Ranger Grant re-

---

1. "Presence in a park area when under the influence of alcohol or a controlled substance to a degree that may endanger oneself or another person, or damage property or park resources, is prohibited." 36 C.F.R. § 2.35(c) (1999).

ceived word that a vehicle had become stuck in the sand near the south entrance to the Seashore and that the occupants of the vehicle were at the Provincetown Airport. *See Regan* at 2. At the airport, Grant met with the owner and operator of the vehicle, Regan, and an occupant of the vehicle, Mr. Emerson ("Emerson"). *See id.* During this encounter, Ranger Grant noticed that Regan's demeanor was agitated, his breath smelled of alcohol, and his eyes were bloodshot. *See id.* at 3. On the other hand, Ranger Grant "noticed nothing unusual about Mr. Regan's speech and there was no testimony at trial that Mr. Regan was unsteady on his feet at this point in time." *Id.* at 3. Nevertheless, Grant asked Mr. Regan how much he had had to drink that evening. At that point, Regan "stepped back and in a tone which questioned how Ranger Grant could ever ask such a question, replied that he had had nothing to drink that night and was offended by the suggestion that he had been drinking." *Id.* When Grant proceeded to ask questions about the vehicle, Regan walked away without making any statements and without argument from Grant. *See id.*

After Regan left the airport, Grant continued to speak with Emerson and learned that there were two other persons in the stuck vehicle and "they had all been drinking and none was fit to drive...." [2] *Id.* Grant and Emerson ventured to the vehicle and discovered the two other occupants passed out (but breathing) in the backseat. *See id.* at 4. Grant also found (and emptied) a half-consumed can of beer on the

console. *See id.* Realizing that the vehicle's four-wheel drive feature had not been turned on, Ranger Grant engaged the system and left Emerson and the vehicle for several minutes in order to find a winch. *See id.* When he returned to the vehicle, it was gone and so was Emerson. *See id.* Moments later, however, Ranger Grant observed Emerson driving the vehicle in another area of the Seashore with Regan in the passenger seat. *See id.* at 5. Grant activated his emergency lights and stopped the vehicle just as it traveled outside the Seashore boundary. *See id.* Ranger Grant approached the vehicle and asked Regan to exit. *See id.* At this point, "Regan not only had bloodshot eyes but his speech was slurred and he was unsteady on his feet when he got out of the vehicle." *Id.* Regan also fumbled through his wallet when asked to produce his driver's license.[3] *See id.*

Based on the aforementioned facts, Chief Magistrate Judge Collings determined that "during at least twenty minutes, Mr. Regan was walking alone on the seashore property ... in a state where he became unsteady in his gait and slurring in his speech." *Id.* at 6. The court thus concluded that, in violation of the Regulation, Regan "was present in the Cape Cod National Seashore under the influence of alcohol to a degree that he may [sic] injure himself." *Id.*

## C. *Analysis*

The only two reported cases that discuss the Regulation,[4] both from the Ninth Cir-

---

2. There is some dispute as to whether those Emerson included as too intoxicated to drive included Regan, and the trial transcript further confuses the issue. *See* Tr. at 7. Since the Court must view the evidence in the light most favorable to the prosecution, it assumes that Emerson stated that all of the occupants, including Regan, had been drinking and were unfit to drive.

3. Chief Magistrate Judge Collings ends his recitation of the facts at this point. The trial transcript reveals, however, that Grant arrested Emerson for driving while intoxicated.

*See* Tr. at 11. The Provincetown Police spoke with but did not detain Regan and, as observed by Ranger Grant, Regan walked away from the vehicle and returned unattended to the Seashore. *See id.* at 11, 20. The transcript reveals that Regan was never arrested.

4. Although neither party considers analogous state statutes, independent research has revealed at least ten identical or strikingly similar state enactments. *See* Ala.Code § 32–5A–221 (1999); Ark.Code Ann. § 5–71–212 (Michie 1999); Cal.Penal Code § 647(f) (West 1999); Del.Code Ann. tit. 11, § 1315 (1999);

cuit, consider the level and type of evidence sufficient to support a conviction. In the most recent case, *United States v. Nyemaster*, 116 F.3d 827 (9th Cir.1997), a ranger found an individual on park property asleep in the driver's seat of his car with slurred speech, bloodshot eyes, and reeking of alcohol. Fearing that the individual might drive away, drown in a river, or have difficulty crossing a nearby road, the ranger arrested him and the individual was later convicted for violating the Regulation. *See id.* at 828. The Ninth Circuit reversed the conviction because the evidence showed neither a sufficient "vulnerability to danger"[5] nor an excessive level of intoxication.[6] *Id.* at 829–30. In contrast, in *United States v. Hogue*, 752 F.2d 1503 (9th Cir.1985), the Ninth Circuit upheld the conviction under the Regulation of a woman whose "abilities [were] substantially impaired from alcohol, was alone in a national park at night, unequipped for camping, asleep in a vehicle with an open window, not within a designated campground or shelter."[7] *Id.* at 1505. The court determined that the defendant, "[i]n her vulnerable condition . . ., could neither

defend herself against humans or animals, nor take care of herself had she to leave her car for any reason." *Id.* In reaching its conclusion, the court stated that, "[a]fter park rangers discovered [the defendant] in this condition, they would have acted irresponsibly had they left her unattended." *Id.*

■ In light of *Nyemaster* and *Hogue*, Regan contends that he was not in such a state of intoxication or vulnerable condition as to warrant a conviction under the Regulation. Like the defendant in *Nyemaster*, Regan was not determined to be intoxicated by sobriety testing or breathalyzer. The only evidence of intoxication—analogous to the evidence which did not carry the day in *Nyemaster*—was bloodshot eyes, slurred speech, the scent of alcohol, and unsteadiness. In contrast, unlike the defendant in *Hogue*, Ranger Grant allowed Regan to walk about the Seashore unattended while he was purportedly so intoxicated as to be a danger to himself.[8] In response, the government first states that, "[i]f sleeping alone in a vehicle while intoxicated create[d] a danger punishable

---

9 Guam Code Ann. § 61.25(a) (1998); Ky. Rev.Stat.Ann. § 525.100(1) (Banks–Baldwin 1998); Mich.Comp.Laws Ann. § 750.167(e) (1999); N.Y.Penal Law § 240.40 (McKinney 1999); Pa.Cons.Stat.Ann. tit. 18, § 5505 (1999); Tex.Penal Code Ann. § 49.02 (West 1999).

5. In reaching this conclusion, the circuit court noted that the defendant (i) was arrested in the afternoon, (ii) was using the car for shelter only, (iv) was dressed properly for the weather, (v) was oriented, cooperative, and coherent, and (vi) remained in his car even when he had an opportunity to leave. *See Nyemaster*, 116 F.3d at 829. Moreover, the court emphasized that the ranger was "concerned about risks that any camper in the park might encounter after consuming just one drink." *Id.*

6. On this point, the court noted that no field sobriety test was administered, a breathalyzer test was inconclusive, and the government failed to present evidence establishing the size of a partially empty bottle of gin found in the

possession of the defendant. *See Nyemaster*, 116 F.3d at 828–29.

7. The court stated that the rangers who discovered the defendant noted a strong odor of alcohol from the car's open window and saw twelve empty beer cans in the car. The defendant also failed a sobriety test. *See Hogue*, 752 F.2d at 1504.

8. Regan makes much of the fact that Grant allowed him to walk about the Seashore after their first encounter. The findings of the Chief Magistrate Judge, however, clarify that the period of Regan's intoxication relied upon to support the conviction occurred between the two encounters. *See Regan* at 5–6 ("Whether he consumed additional alcohol during the time period [between the two encounters] or whether the effects of the alcohol he had previously consumed had become stronger, the plain fact is that during at least twenty minutes Mr. Regan was walking alone on the seashore property at or about 2:30 P.M. [sic] in a state where he became unsteady in his gait and slurring in his speech.") Ranger Grant's lack of concern for Regan's

under the regulation [as determined in *Hogue*], *a fortiori*, walking around in the National Seashore area while intoxicated creates a danger." Appellee Br. at 8. Second, the government argues that the Chief Magistrate Judge could reasonably have inferred that "by allowing Mr. Emerson to drive the vehicle prior to the time it was stopped by Ranger Grant, Defendant endangered himself...." [9] *Id.*

■ The fact that Ranger Grant allowed Regan to return to the Seashore in a purportedly intoxicated state [10] acts to undermine both the level of Regan's intoxication and his vulnerability to danger. Regan argues that if he were so intoxicated as to endanger himself, Ranger Grant "would have acted irresponsibly had [he] left [Regan] unattended." *Hogue*, 752 F.2d at 1505. Considering the significant deference to be afforded the Chief Magistrate Judge, however, this Court holds that his failure to address Regan's unattended return to the park does not warrant a reversal. The verdict is perfectly defensible on the ground that, while Grant may not have been as strict as the arresting rangers in *Hogue* since he allowed Regan to stumble drunkenly through the park, Regan nonetheless was a threat to himself. The applicability of the Regulation does not turn on the enforcement judgments or protective acts of a park ranger. Accordingly, as a rational trier of fact could have found beyond a reasonable doubt the essential elements of presence, intoxication, and vulnerability to danger, there is no clear error and the Court rejects Regan's appeal on sufficiency grounds. *Cf. United States v. Crutchfield*, 418 F.Supp. 701, 702 (W.D.Pa. 1976) (upholding conviction for violation of Pennsylvania statute that prohibits person from appearing "in any public place manifestly under the influence of alcohol to the degree that he may endanger himself" where defendant was bouncing off walls of corridor, weaving back and forth, smelling of alcohol, and was incoherent).

## II. CONSTITUTIONALITY OF THE REGULATION

As a second basis for challenging his conviction, Regan argues that the Regulation is unconstitutionally void for vagueness.[11] Citing the recent case of *City of Chicago v. Morales*, 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999), and relying on the disparity between Ranger Grant's failure to detain Regan on the night of the incident and the government's subsequent decision to prosecute, Regan contends that the Regulation "fails to properly alert the ordinary citizen regarding the type of conduct that is prohibited" and "allows arbi-

---

safety immediately after the airport meeting is thus irrelevant.

9. In the same breath, the government argues that it would have been reasonable for Magistrate Collings to infer that (i) by driving the vehicle *before* it became stuck, Regan may have violated the Regulation, and (ii) allowing Emerson to drive the vehicle endangered the other passengers, other persons at the Seashore, and Seashore property. *See id.* With respect to Regan's pre-breakdown driving, however, Magistrate Collings did not consider whether Regan was intoxicated at that time. *See supra* note 8. As to endangering others and park property, Magistrate Collings limited the basis of the conviction to Regan's self-endangerment. *See Regan* at 6 ("In acting as he did in these circumstances, he endangered himself.") The Court thus need not consider these other arguments raised by the government.

10. Ranger Grant testified twice to this fact during the trial. In fact, the Chief Magistrate Judge recalled Grant to the stand for clarification on this point. *See* Tr. at 20–21.

11. Citing *Hogue* and *Nyemaster*, Chief Magistrate Judge Collings held that "[t]he regulation is clearly constitutional." *Regan* at 2. Although *Hogue* upheld the constitutionality of the statute under the specific facts of that case, reliance upon *Nyemaster* was inapposite as that court refused to consider a vagueness challenge due to the defendant's failure to raise the issue at trial. *See Nyemaster*, 116 F.3d at 830 ("We will not review this claim because Nyemaster raises it for the first time on appeal."). This Court must review the constitutionality of the Regulation *de novo*. *See United States v. Owens*, 167 F.3d 739, 743 (1st Cir.), *cert. denied, Owens v. United States*, — U.S. —, 120 S.Ct. 224, 145 L.Ed.2d 188 (1999).

trary and discriminatory enforcement." Appellant Br. at 11. The government rejects Regan's argument as "cursory" and states that the regulation—and its "evident purpose"—give adequate notice that "a person in defendant's intoxicated condition [is prohibited] from walking through the Cape Cod National Seashore in the middle of the night." Appellee Br. at 5–6.

Informed by the Supreme Court's holding in *Morales*, a statute, regulation, or ordinance may be unconstitutionally vague because it either (1) fails to provide fair notice of prohibited conduct, or (2) fails to establish minimal guidelines to govern enforcement. *See Morales*, 119 S.Ct. at 1859–62. Thus, if Regan's argument prevails on either prong, the Regulation must be held unconstitutional. Furthermore, First Circuit precedent reveals that the constitutionality of this particular Regulation hinges on the specific facts of the case at bar:

> The Due Process Clause of the Fifth Amendment requires that a criminal statute be found unconstitutionally vague if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.... Because no First Amendment concerns are implicated in this appeal, the vagueness challenge is limited by the framework of the specific facts in the record of the case.

*United States v. Marquardo*, 149 F.3d 36, 41–42 (1st Cir.1998) (internal citations and quotation marks omitted). Because the Regulation here punishes only non-expressive conduct, the First Amendment is not implicated. As a result, analysis prescinds from the specific facts of the case and Regan is unable to make reference to other theoretical scenarios that may be more troubling under the Regulation.

Under this case-specific standard, the Regulation easily withstands the first prong of the vagueness challenge. The Regulation prohibits presence in a park area when under the influence of alcohol to a degree that a person may endanger oneself. *See* 36 C.F.R. § 2.35(c) (1999). A person of ordinary intelligence knows that he "endangers" himself by wandering aimlessly about 43,557 acres [12] of shoreline, beaches, forests, and ponds, by himself, in the middle of the night, on a holiday weekend, while experiencing difficulties walking due to intoxication. Myriad dangers threaten an inebriated individual wandering about such potentially dangerous environs. Like the defendant in *Hogue*, as to whom the application of the Regulation was deemed constitutional, Regan should have been aware of his self-endangerment because, his "abilities [were] substantially impaired from alcohol, [he] was alone in a national park at night, unequipped for camping ..., [and] not within a designated campground or shelter." *Hogue*, 752 F.2d at 1505. Thus, because the Regulation provides fair notice that Regan's conduct is prohibited, his vagueness challenge fails under this initial prong.

Although the Regulation provides fair notice, the Supreme Court has articulated a second "independent reason" for deeming a criminal law void for vagueness when the challenged law authorizes arbitrary or discriminatory enforcement. *See Morales*, 119 S.Ct. at 1859. In this context, a court must consider whether the challenged law "necessarily entrusts lawmaking to the moment-to-moment judgment of the policeman on his beat." *Id.* at 1861 (quoting *Kolender v. Lawson*, 461 U.S. 352, 359, 103 S.Ct. 1855, 75 L.Ed.2d 903 [1983]); *accord United States v. Hilton*, 167 F.3d 61, 75 (1st Cir.), *cert. denied, Hilton v. United States*, —— U.S. ——, 120 S.Ct. 115, 145 L.Ed.2d 98 (1999). The arbitrary or discriminatory enforcement prong derives from both notions of fairness and concerns about arbitrary government conduct—both

---

12. *See* National Park Service, *Cape Cod National Seashore* (last modified Feb. 22, 2000)

<http://www.nps.gov/caco/>.

of which are as old as the Republic. The constitutional principle undergirding the Due Process Clause is that citizens should never be subjected to the whims of an unrestrained executive. Through the arbitrary or discriminatory enforcement prong of the vagueness challenge, an individual argues that because the particular law only vaguely defines the prohibited conduct, the relevant legislative or regulatory body has surrendered its lawmaking power to an executive official, thereby vesting complete discretion in that official. Thus, the age old threat of arbitrary government action is realized. Here, Regan argues that the Regulation's vague terms vested an inordinate amount of discretion in the park rangers charged with enforcing it, such that his conviction cannot constitutionally be upheld. The Court disagrees.[13]

*Morales* is instructive on this point. In *Morales*, the Supreme Court struck down a Chicago ordinance that prohibited "criminal street gang" members from loitering in any public place with one or more other persons. *See Morales*, 119 S.Ct. at 1854 n. 2. The particularly offending language in the ordinance was the definition of the term "loitering," which the ordinance described as "to remain in any one place with no apparent purpose." *Id.* at 1861. Recognizing that this language failed to provide any objective limitations on law enforcement officials charged with enforcing the ordinance, the Supreme Court held that "[t]he broad sweep of the ordinance . . . violates 'the requirement that a legislature establish minimal guidelines to govern law enforcement.' " *Id.* at 1861 (quoting *Kolender*, 461 U.S. at 358, 103 S.Ct. 1855). The Regulation at issue does not suffer from the same deficiency.

The relevant portions of the Regulation prohibit presence in a park area when under the influence of alcohol to a degree that a person may endanger oneself. *See* 36 C.F.R. § 2.35(c) (1999). The phrase "presence in a park area" generates no vagueness problems. Furthermore, courts in various contexts have consistently held that the phrase "under the influence of alcohol" does not provide excessive discretion to law enforcement personnel. *See Virgin Islands v. Steven*, 134 F.3d 526, 528 (3d Cir.1998) (rejecting argument that "driving under the influence" statute, which did not even specify a blood-alcohol level requirement, was unconstitutionally vague because it provided too much discretion to law enforcement officials). The closer question is whether "to a degree that may endanger oneself" provides "minimal guidelines to govern law enforcement." *Morales*, 119 S.Ct. at 1861. Yet, unlike the ordinance in *Morales*, which authorized law enforcement officials to make wholly subjective determinations about when individuals were loitering, here the Regulation provides an objective standard by which an individual's intoxication can be measured. Under the Chicago ordinance, an officer would have been completely justified in ordering individuals to disperse if the individuals remained in one location without—in the officer's personal, subjective view—any apparent purpose. As the Supreme Court explained, "[i]t matters not whether the reason that a gang member and his father, for example, might loiter near Wrigley Field is to rob an unsuspecting fan or just to get a glimpse of Sammy Sosa leaving the ballpark . . . ." *Id.* at 1861. In either case, a police officer would be acting entirely within her virtually unlimited discretion if she ordered the pair to disperse. On the

13. No other court has addressed the arbitrary or discriminatory enforcement issue in the context of this Regulation or a similar state version. Although its opinion is carefully reasoned, the Ninth Circuit in *Hogue* did not consider whether the Regulation affords law enforcement officials too much discretion. Likewise, the two state court decisions which held that nearly identical public intoxication statutes were not unconstitutionally vague did not question whether the challenged statute afforded law enforcement agents inordinate discretion. *See Alexander v. State,* 630 S.W.2d 355, 358–359 (Tex.Ct.App.1982); *People v. Myers,* 39 A.D.2d 122, 332 N.Y.S.2d 242, 246 (1972).

contrary, the Regulation here provides at least minimal guidelines that limit law enforcement's discretion. In fact, the Regulation restricts law enforcement to a greater extent than the more flexible "under the influence" statute upheld in *Steven.* *See Steven,* 134 F.3d at 528. A Ranger cannot arrest anyone under the influence of any amount of alcohol, as an officer in the Virgin Islands can, but only those individuals who are under the influence to such a degree that they may endanger themselves. The Regulation appropriately restricts park rangers to the task of identifying when intoxicated individuals are a danger to themselves and others. Accordingly, this Court rejects Regan's arbitrary and discriminatory enforcement challenge. *See, e.g., People v. Gagnon,* 129 Mich.App. 678, 682–84, 341 N.W.2d 867 (1983) (upholding statute that prohibits "[a] person who is intoxicated in a public place and who is ... endangering directly the safety of another person or of property"); *In re Joseph G.,* 7 Cal.App.3d 695, 701–02, 87 Cal.Rptr. 25 (Cal.Ct.App.1970) (upholding statute that prohibits person "[w]ho is found in any public place under the influence of intoxicating liquor, ... in such a condition that he is unable to exercise care for his own safety or the safety of others" because disregard for safety "is a present condition that can be determined from facts existing at the time of arrest"); *Budd v. Madigan,* 418 F.2d 1032 (9th Cir. 1969) (upholding same California statute).

## III. CONCLUSION

Although Terrance Regan appeals his conviction "of an offense that will not be recorded in the annals of major crime[, t]he issue [he] raises merits careful consideration." *Hogue,* 752 F.2d at 1504. Nonetheless, for the reasons set forth above, the Court rejects Regan's two bases of appeal and AFFIRMS his conviction.