**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 12, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

PATRICK TALK,

        Defendant-Appellant.

No. 10-2123

(D.C. No. 1:08-CR-00044-MV-1)
(D.N.M.)

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

KENNETH MARTINEZ,

        Defendant-Appellant.

No. 10-2130

(D.C. No. 1:08-CR-00044-MV-2)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, and **EBEL** and **HOLMES**, Circuit Judges.

Defendants-Appellants Patrick Talk and Kenneth Martinez, both enrolled

members of the Navajo Tribe, challenge the procedural reasonableness of their

---

[*]     This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

sixty-month sentences of imprisonment. The district court imposed the sentences after the defendants pleaded guilty to involuntary manslaughter in Indian Country of Shawn Begay, also an enrolled member of the Navajo Tribe, in violation of 18 U.S.C. §§ 1112 and 1153.[1] Specifically, Mr. Talk argues that the district court procedurally erred in finding that he did not fully accept responsibility for Mr. Begay's death, and by failing to adequately explain his sentence, because it explained neither why he received the same sentence as Mr. Martinez nor why his sentence was longer than the U.S. Sentencing Guidelines Manual ("U.S.S.G.") range for aggravated assault. Mr. Martinez argues that the district court procedurally erred by enhancing his sentence pursuant to U.S.S.G. § 3A1.1 because Mr. Begay was not a vulnerable victim and, even if he was, Mr. Martinez neither knew nor should have known that he was.[2] Exercising jurisdiction under 28 U.S.C. § 1291, we **AFFIRM** Mr. Talk's and Mr. Martinez's sentences.

---

[1] Mr. Talk and Mr. Martinez were represented by separate counsel in the district court and before us on appeal. Although the same panel of our court heard oral arguments concerning the two men, their appeals were argued separately, and the appeals have not been formally consolidated. Nonetheless, because Mr. Talk's and Mr. Martinez's charges arise out of a common set of facts, we resolve the issues raised by their appeals in one Order and Judgment.

[2] The Guidelines computations used by the district court in sentencing both Mr. Talk and Mr. Martinez were based upon the edition of the U.S.S.G. effective November 1, 2009. Neither defendant has taken exception before us to the district court's use of this edition; therefore, we look as well to the 2009 edition of the Guidelines in conducting our review.

## FACTUAL BACKGROUND

On October 29, 2007, Mr. Martinez made a derogatory comment about Lance Ortiz at a gas station. Mr. Martinez was with Mr. Talk (his cousin); and Mr. Ortiz was with Mr. Begay, Bertha Begay (Mr. Begay's mother), Veronica S., and one other associate.

Later that evening, Mr. Talk, Mr. Martinez, and some other members of the Martinez family were outside the home of Mr. Martinez's mother, Carol Martinez. The home was in Iyanbito, New Mexico, which is located within the exterior boundaries of the Navajo Indian Reservation. A group, including Mr. Ortiz (who had been the subject of Mr. Martinez's derogatory comment), Mr. Begay and Ms. S., drove by Ms. Martinez's home. They stopped to confront Mr. Talk, Mr. Martinez, and the others.

Everyone present had been drinking alcohol that evening. A fight quickly ensued between the two groups. However, Mr. Begay was extremely drunk and "merely stood back watching and did not fight with anyone." R. Talk, Vol. 2, at 42 (Statement of Reasons, dated May 6, 2010); *accord* R. Martinez, Vol. 2, at 65 (Statement of Reasons, dated May 6, 2010). During the course of the melee, Mr. Talk pushed Mr. Begay to the ground. Mr. Begay's "intoxication left him defenseless. Once he was pushed to the ground, he lay motionless while [Messrs. Martinez and Talk] repeatedly hit and kicked him in the chest and head." R. Talk, Vol. 2, at 38; *accord* R. Martinez, Vol. 2, at 61. Mr. Talk admitted that he

3

kicked Mr. Begay three times, once in the head. Mr. Martinez admitted that he punched Mr. Begay "several times while [he] was on the ground" and that he struck Mr. Begay "in the chest several times with a stick." R. Talk, Vol. 2, at 42 (alteration in original) (internal quotation marks omitted); *accord* R. Martinez, Vol. 2, at 65. Mr. Begay "was so inebriated that not once did he throw a punch or even attempt to defend himself." R. Talk, Vol. 2, at 38; *accord* R. Martinez, Vol. 2, at 61. Mr. Talk also directed his violence at Ms. S. Mr. Talk hit Ms. S. "on her side with [a] shovel"; he admitted that he considered hitting her on the head "but decided not to because he did not want to kill her." R. Talk, Vol. 2, at 16 (Presentence Investigation Report, dated Mar. 3, 2010); *accord* R. Martinez, Vol. 2, at 15 (Presentence Investigation Report, dated Mar. 3, 2010).

Mr. Ortiz shouted for his group to leave because they were outnumbered. Mr. Ortiz and two of his group drove away, but they left Mr. Begay and Ms. S. behind with Mr. Talk and Mr. Martinez. Mr. Ortiz returned to Ms. Martinez's home with more people. Mr. Begay lay on the ground motionless. Mr. Ortiz pretended that a tire iron he brought with him was a gun, and threatened to shoot Mr. Talk and Mr. Martinez if they did not get away from Mr. Begay. Mr. Begay could not get up on his own, so Mr. Ortiz yelled for someone to help him move Mr. Begay. At that point, Ms. Begay arrived, and Mr. Ortiz and some others in their group helped carry Mr. Begay to her car.

Ms. Begay left with Mr. Begay, but did not drive him to the hospital. Mr.

4

Begay was not taken to the hospital until the following morning, almost nine hours after he was attacked. When he arrived at the hospital, Mr. Begay was unconscious and intoxicated. Mr. Begay died from his injuries without ever regaining consciousness.

## PROCEDURAL HISTORY

Mr. Talk and Mr. Martinez were indicted together on January 10, 2008. Mr. Talk and Mr. Martinez were charged with voluntary manslaughter and assault resulting in serious bodily injury with respect to Mr. Begay, and Mr. Talk was additionally charged with assault resulting in serious bodily injury with respect to Ms. S.

On September 30, 2008, Mr. Talk and Mr. Martinez entered into plea agreements under which they agreed to plead guilty to involuntary manslaughter, as charged in an information filed that day. In turn, the government agreed to dismiss the indictment, and the parties agreed to an offense level of twelve, after a two-level reduction for acceptance of responsibility. However, at sentencing on March 5, 2009, the district court rejected Mr. Talk's and Mr. Martinez's plea agreements because it believed that defendants' "conduct here is much too serious for the sentence that is called upon under this plea agreement." R. Talk, Vol. 3, at 48 (Sentencing Tr., dated Mar. 5, 2009); *accord* Supp. R. Martinez, Vol. 1, at 48 (Sentencing Tr., dated Mar. 5, 2009).

On January 13, 2010, Mr. Talk and Mr. Martinez entered into new plea

5

agreements in which they again both pleaded guilty to involuntary manslaughter, but the new agreements did not specify an offense level. The district court accepted their plea agreements and sentenced them on May 6, 2010. After applying a two-level vulnerable-victim enhancement pursuant to U.S.S.G. § 3A1.1 and a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the district court found that each defendant had an adjusted offense level of seventeen. Mr. Talk was assigned a criminal history category I and Mr. Martinez was assigned a criminal history category III. Based on their offense levels and criminal histories, the district court calculated Mr. Talk's Guidelines range to be twenty-four to thirty months' imprisonment and Mr. Martinez's Guidelines range to be thirty to thirty-seven months' imprisonment. The district court then varied upward and sentenced each man to sixty months' imprisonment. Mr. Talk's and Mr. Martinez's appeals followed.

## MR. TALK'S APPEAL

Mr. Talk challenges only the procedural reasonableness, and not the substantive reasonableness, of his sentence. Specifically, Mr. Talk argues that his sentence was procedurally unreasonable because the district court: (1) relied upon the clearly erroneous factual determination that he did not fully accept responsibility for Mr. Begay's death; (2) failed to explain why it imposed the same sentence on him as on Mr. Martinez; and (3) did not explain why it imposed a sentence above the Guidelines range for aggravated assault. For the reasons

6

that follow, we reject Mr. Talk's procedural-unreasonableness challenges and affirm his sentence.

## I. Standard of Review: Plain-Error Review Applies to Mr. Talk's Claims

"A sentence is procedurally unreasonable if the district court incorrectly calculates or fails to calculate the Guidelines sentence, treats the Guidelines as mandatory, fails to consider the [18 U.S.C.] § 3553(a) factors, relies on clearly erroneous facts, or inadequately explains the sentence." *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)); *accord United States v. Koufos*, --- F.3d ----, No. 10-2199, 2011 WL 5590318, at *7 (10th Cir. Nov. 17, 2011). Ordinarily, this court "review[s] claims of procedural error for an abuse of discretion, evaluating factual findings for clear error and legal determinations de novo." *United States v. Middagh*, 594 F.3d 1291, 1295 (10th Cir. 2010) (citations omitted).

However, "[w]hen a party fails to object contemporaneously to the district court's sentencing procedure, we review procedural reasonableness challenges for plain error." *United States v. Poe*, 556 F.3d 1113, 1128 (10th Cir. 2009). "Under the plain error standard, we will not review the district court's factual findings relating to sentencing, but will review for particularly egregious or obvious and substantial legal error, which our failure to consider would result in a miscarriage of justice." *United States v. Heredia-Cruz*, 328 F.3d 1283, 1288 (10th Cir. 2003) (quoting *United States v. Ballard*, 16 F.3d 1110, 1114 (10th Cir. 1994)) (internal

7

quotation marks omitted); *see United States v. Lee*, 989 F.2d 377, 380 (10th Cir. 1993) ("Plain error review is not appropriate when the alleged error involves the resolution of factual disputes . . . ."), *abrogated in part on other grounds as recognized in United States v. Berger*, 251 F.3d 894, 907 (10th Cir. 2001).

"In order to prevail on plain error review, a party must show there is (1) error, (2) that is plain, (3) which affects [the party's] substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Poe*, 556 F.3d at 1128 (alteration in original) (quoting *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007)) (internal quotation marks omitted). "The defendant has the burden of establishing all four elements of plain error." *United States v. Hall*, 625 F.3d 673, 684 (10th Cir. 2010).

Mr. Talk concedes that he "did not specifically raise below the procedural errors he raises before this court," and that "[o]rdinarily, in that circumstance this court would review only for plain error." Talk Opening Br. at 34–35. Nevertheless, Mr. Talk contends that he is not required to satisfy plain-error review because he did not have the opportunity to object, he could not have anticipated the district court's errors, and the district court did not specifically elicit objections after pronouncing sentence. However, Mr. Talk fails to show that any exception to plain-error review applies. Accordingly, we will evaluate his claims under the plain-error standard.

A. *Opportunity to Object Before the District Court*

First, Mr. Talk argues that this court should not apply plain-error review because he did not have the opportunity to object before the district court. "[T]here is an exception . . . to the requirement that an appellate issue must have been raised in district court. When a party had no opportunity to raise the issue, we review it as if it had been presented." *Middagh*, 594 F.3d at 1295 (citing Fed. R. Crim. P. 51(b)); *accord United States v. Uscanga-Mora*, 562 F.3d 1289, 1294 (10th Cir. 2009) ("[T]he federal rules provide for plain error review only when counsel has been given, but has not taken advantage of, an *opportunity* to voice his or her objection; where no such opportunity was afforded in the district court, our normal standards of review pertain.").

By way of convenient shorthand, we refer to this plain-error exception as the "opportunity" exception. The opportunity exception does not apply here because Mr. Talk had ample opportunity to object to his sentence in the district court. After pronouncing sentence, the district court asked if there were any questions, then it accepted Mr. Talk's prison-placement request and allowed Mr. Talk to "note [his] objection to the Court's upward [variance] in this case without any notice to counsel." R. Talk, Vol. 3, at 171. The district court then asked if there was anything further and permitted the government to respond to Mr. Talk's variance objection on the record. *See id.* at 171–72. In sum, the district court handled the sentencing proceedings in a manner that afforded Mr. Talk ample

9

opportunity to raise the challenges that he now seeks to present to us. *See*

*Uscanga-Mora*, 562 F.3d at 1294 ("[T]he district court . . . gave both parties the

opportunity to raise any additional concerns. The judge then proceeded to ask,

specifically, whether either was aware of any legal reason why sentencing ought

not proceed. Under these circumstances, the parties indisputably had the

opportunity to raise any as-yet unvoiced objection to the court's statement of

reasons . . . ."). For example, this case stands in stark contrast to *Middagh*, where

this court applied the opportunity exception because "[t]he court cut counsel

short, stopping him midsentence and telling him that the 'matter is done.'" 594

F.3d at 1295. Accordingly, we conclude with no difficulty that the opportunity

exception cannot save Mr. Talk from plain-error review.

### B. *Unforeseeable Error*

Second, Mr. Talk argues that plain-error review does not apply because "a

defendant is not required to object when the sentencing court commits an error

that the defendant cannot be expected to anticipate," and "the procedural errors

Mr. Talk presents to this court could not have been anticipated." Talk Opening

Br. at 37–38 (citing *United States v. Begay*, 470 F.3d 964, 976 (10th Cir. 2006)).

Assuming without deciding that *Begay*'s unforeseeable-error exception

remains good law,[3] Mr. Talk cannot satisfy it here. *Begay* requires that the error

_____

[3]     "[I]t is not entirely clear that *Begay*'s unforeseeable error doctrine is

(continued...)

10

be one which the defendant "would have had no reason to anticipate."  470 F.3d

at 976.  *Begay* distinguished an unforeseeable error under *United States v.*

*Booker*, 543 U.S. 220 (2005), from errors for which defense counsel had

constructive notice, 470 F.3d at 976 (citing *United States v. Barajas*, 331 F.3d

1141, 1144 (10th Cir. 2003)), and from a failure to adequately explain a sentence

based on the 18 U.S.C. § 3553(a) sentencing factors, 470 F.3d at 976 (citing

*United States v. Lopez-Flores*, 444 F.3d 1218, 1220–21 (10th Cir. 2006)).

Subsequent to our decision in *Begay*, the Supreme Court explained that "a

competent lawyer . . . will anticipate most of what might occur at the sentencing

hearing . . . .  Garden variety considerations of *culpability*, criminal history,

likelihood of re-offense, seriousness of the crime, *nature of the conduct* and so

forth should not generally come as a surprise to trial lawyers who have prepared

for sentencing."  *Irizarry v. United States*, 553 U.S. 708, 716 (2008) (emphasis

added) (quoting *United States v. Vega-Santiago*, 519 F.3d 1, 5 (1st Cir. 2008) (en

banc)) (internal quotation marks omitted).  Mr. Talk's asserted procedural errors

concern just such garden-variety considerations, relating to the district court's

---

[3]    (...continued)
still good law."  *United States v. Martinez-Barragan*, 545 F.3d 894, 899 n.1 (10th
Cir. 2008).  *Begay* "relied significantly on" *United States v. Bartsma*, 198 F.3d
1191 (10th Cir. 1999).  *Martinez-Barragan*, 545 F.3d at 899 n.1.  Subsequently,
this court "explicitly overruled *Bartsma*," but left open the question "whether the
unforeseeable error doctrine is still vital."  *Id.*  We need not, and do not, however,
answer this question today.

11

resolution and explanation of issues centered on the nature of his conduct in accepting or not accepting responsibility, his comparative culpability for the offense conduct in juxtaposition to Mr. Martinez, and the selection of a sentence that appropriately reflects the seriousness of the offense. We are hard-pressed to conclude that competent counsel could not have anticipated—and been prepared to object to—the alleged procedural errors that Mr. Talk presents to us now. *Cf. Barajas*, 331 F.3d at 1145 ("Defendant has not suggested any reason why his counsel could not have anticipated the conditions imposed by the district court."). Accordingly, Mr. Talk cannot escape plain-error review through the purported unforeseeable-error exception.

### C. *Objections Specifically Elicited*

Third, Mr. Talk argues that this court should "apply plain error review of procedural sentencing errors only if the sentencing court has explicitly elicited fully-articulated objections to the sentencing procedure following the announcement of the sentence." Talk Opening Br. at 38–39. We have already rejected this argument and held that "a trial judge is not required to specifically elicit objections after announcing a sentence. . . . If a proper record is not made in the district court, we will only review for plain error." *United States v. Steele*, 603 F.3d 803, 807 (10th Cir. 2010). Mr. Talk concedes this fact, and only "raises this contention to preserve it for possible en banc and/or Supreme Court review." Talk Opening Br. at 39.

12

Mr. Talk has failed to establish that any exception to plain-error review applies, so we will evaluate his claims only for plain error.

## II. Acceptance of Responsibility

Mr. Talk argues that "the district court committed procedural error when it chose Mr. Talk's sentence based in part on its clearly erroneous, unreasonable, impermissible finding that he did not fully accept responsibility." *Id.* at 45. Whether a defendant has accepted responsibility, however, is a question of fact. *See Heredia-Cruz*, 328 F.3d at 1289. A district court procedurally errs if it relies on clearly erroneous facts in imposing sentence, *see Haley*, 529 F.3d at 1311, but challenges to a district court's factual findings are not cognizable under plain-error review, *see Heredia-Cruz*, 328 F.3d at 1288 ("Under the plain error standard, we will not review the district court's factual findings relating to sentencing . . . ." (internal quotation marks omitted)); *Lee*, 989 F.2d at 380 ("Plain error review is not appropriate when the alleged error involves the resolution of factual disputes . . . ."). Accordingly, because we review Mr. Talk's claims only for plain error, we may not consider his challenge to the district court's factual finding that he did not fully accept responsibility. Consequently, this challenge fails.[4]

_____

[4] We briefly pause to comment upon Mr. Talk's argument that the district court improperly penalized him for his counsel's legal arguments. *See* Talk Opening Br. at 33. Mr. Talk does not cite to anything in the record to

(continued...)

## III. Explanation of Sentence

Mr. Talk argues that the district court procedurally erred by failing to adequately explain his sentence. Specifically, he faults the district court for not explaining "why it imposed the same sentence on Mr. Talk as it did on Mr. Martinez," Talk Opening Br. at 48, and "why it imposed a sentence above the guideline range for aggravated assault," *id.* at 53. The district court adequately explained Mr. Talk's sentence, and Mr. Talk's claims to the contrary are without merit.

As noted above, a district court commits procedural error if it inadequately explains the sentence it imposes. *See Haley*, 529 F.3d at 1311. A district court must "state 'the reasons for its imposition of the particular sentence.' . . . When the sentence imposed is outside the Guidelines range, . . . the district court [must] give 'the specific reason for the imposition' of the sentence, and must also state the reason in the written order of judgment." *Lopez-Flores*, 444 F.3d at 1222 (quoting 18 U.S.C. § 3553(c)). "The district court [nonetheless] is not required to recite 'any magic words' to demonstrate that it has considered all of the relevant

---

[4]    (...continued)
support this assertion, and we conclude that it is wholly without merit. The district court based its conclusion that Mr. Talk did not fully accept responsibility not on his counsel's arguments, but on Mr. Talk's own statement of acceptance of responsibility. *See, e.g.*, Talk R., Vol. 2, at 43 (noting that Mr. Talk's Presentence Report statement concerning acceptance of responsibility was "less than forthcoming").

arguments . . . ." *United States v. Pinson*, 542 F.3d 822, 833 (10th Cir. 2008) (quoting *United States v. Sanchez-Juarez*, 446 F.3d 1109, 1116 (10th Cir. 2006)).

The district court more than fulfilled its obligation to explain Mr. Talk's sentence, including addressing the matters that Mr. Talk raises here. The district court explicitly noted that it considered the 18 U.S.C. § 3553(a) sentencing factors. In particular, the district court stated

> that if Shawn [Begay] had not died as a result of his injuries, Patrick [Talk] would be facing a significantly harsher sentencing range under the Guidelines. This case is an example of the inequity that can result from strictly imposing a sentence within the recommended Guideline range. If Shawn had not died, Patrick's Guideline range for assault resulting in serious bodily injury would be 46–57 months imprisonment—almost double his current range. Therefore, the Court finds that a sentence within the recommended range of 24–30 months does not reflect the seriousness of this offense, promote respect for the law or provide a just punishment in this case. Furthermore, a sentence within the recommended range would result in unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

R. Talk, Vol. 2, at 43; *see* R. Talk, Vol. 3, at 161–62.

The district court also discussed Mr. Talk's history and characteristics, concluding that "Patrick's personal history and characteristics do not support the imposition of a lesser sentence." R. Talk, Vol. 2, at 44; *see* R. Talk, Vol. 3, at 166–67.

*A. Same Sentence for Mr. Talk and Mr. Martinez*

More specifically, Mr. Talk, citing 18 U.S.C. § 3553(a)(6), argues that "the

15

district court did not consider the need to avoid unwarranted similarities." Talk Opening Br. at 50; *see* Talk Reply Br. at 16, 18. He argues the district court procedurally erred by failing to explain "why it imposed the same sentence on Mr. Talk as it did on Mr. Martinez." Talk Opening Br. at 48. In that vein, he contends that "the imposition of the same sentence on Mr. Talk as on Mr. Martinez is incomprehensible and unjustifiable," *id.* at 49, because while he and Mr. Martinez are equally culpable, Mr. Talk possesses a superior personal history and more positive individual characteristics, including a much less serious criminal record, *see id.* at 48–49. Mr. Talk misapprehends what 18 U.S.C. § 3553(a)(6) requires. This subsection "does not require the sentencing court to compare the sentences of codefendants; rather, it looks to uniformity on a national scale." *United States v. Ivory*, 532 F.3d 1095, 1107 (10th Cir. 2008). Thus, a district court is not obligated to explain why co-defendants receive different (or the same) sentences. And Mr. Talk himself concedes that "ordinarily a district court does not have to compare the sentences of co-defendants." Talk Reply Br. at 17; *see* Talk Opening Br. at 48 ("Obviously, an explanation of that sort would not ordinarily be necessary in a case with more than one defendant.").

Accordingly, we conclude that the district court did not err by failing to explain why it imposed the same sentence on both Mr. Talk and Mr. Martinez.[5]

_____

[5] Because the district court did not err, Mr. Talk cannot establish plain
(continued...)

16

## B. *Upward Variance Beyond Aggravated Assault Guidelines*

Mr. Talk also argues that the district court procedurally erred by failing to explain "why it imposed a sentence above the guideline range for aggravated assault." Talk Opening Br. at 53. He believes that "the district court effectively established a new guideline range—forty-six to fifty-seven months—to which it varied upward," then "in effect varied upward again, this time to sixty months. The court provided no explanation for that [second] upward variance." *Id.* at 52.

Mr. Talk's reading of the record, however, is mistaken. The district court simply found the aggravated-assault Guideline instructive in fashioning an appropriate sentence with respect to the circumstances of this case under 18 U.S.C. § 3553(a). It did not adopt—in effect or otherwise—an alternative Guideline range. Thus, there was only one upward variance, not two. And the court provided a sufficient explanation for the upward variance that it deemed necessary to impose to effectuate the purposes of § 3553(a).

In particular, the district court noted that it recently sentenced another defendant to fifty-six months' imprisonment for assault resulting in serious bodily injury, and explained that while "defendant's conduct in that case [was] very similar to" Mr. Talk's conduct, "unlike here, the victim in that case did not die and remained functional, although impaired." R. Talk, Vol. 2, at 43; *see* R. Talk,

---

[5]     (...continued)
error, and we do not reach the remaining prongs of plain-error review.

17

Vol. 3, at 162. Accordingly, Mr. Talk's challenge is misguided and the district court did not commit procedural error in explaining its upward variance.[6]

## MR. MARTINEZ'S APPEAL

Like Mr. Talk, Mr. Martinez challenges only the procedural reasonableness, and not the substantive reasonableness, of his sentence. Specifically, Mr. Martinez argues that the district court improperly applied the vulnerable-victim enhancement to his sentence because Mr. Begay was not unusually vulnerable. Alternatively, even if Mr. Begay was a vulnerable victim, Mr. Martinez contends that he neither knew nor should have known this in light of his own allegedly "involuntary" intoxication. For the reasons that follow, we reject Mr. Martinez's challenges to the application of the vulnerable-victim enhancement and affirm his sentence.

## I. Standard of Review

"We review the district court's interpretation of the Guidelines de novo and any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010) (quoting *United States v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006)) (internal quotation marks omitted). Normally, "[w]hether a victim is vulnerable and whether a defendant knew or should have known of a victim's

---

[6] Again, because we find no error, we do not reach the remaining prongs of plain-error review.

18

vulnerability are factual determinations that we review for clear error." *United States v. Replogle*, 628 F.3d 1026, 1030 (8th Cir. 2011), *cert. granted*, *judgment vacated on other grounds*, 80 U.S.L.W. 3217, 2011 WL 3063003 (U.S. Oct 11, 2011) (No. 11-5094); *see United States v. Caballero*, 277 F.3d 1235, 1250 (10th Cir. 2002) ("We review the district court's identification of unusually vulnerable victims for clear error."); *see also United States v. Scott*, 529 F.3d 1290, 1302 (10th Cir. 2008) ("Given that the record before us does not establish that her methamphetamine usage and mental illness were vulnerabilities of which Scott knew or reasonably should have known during the relevant time period, the district court's findings to the contrary were clearly erroneous."). However, "to the extent the defendant asks us to interpret the Guidelines or hold that the facts found by the district court are insufficient as a matter of law to warrant an enhancement, we must conduct a de novo review." *Scott*, 529 F.3d at 1300 (brackets omitted) (quoting *United States v. Checora*, 175 F.3d 782, 788–89 (10th Cir. 1999)) (internal quotation marks omitted).

## II. Mr. Begay Was A Vulnerable Victim

The district court found that Mr. Begay was an unusually vulnerable victim because he was severely intoxicated, which left him unable to defend himself. *See* R. Martinez, Vol. 2, at 61 ("[T]he victim was extremely intoxicated . . . . The victim's intoxication left him defenseless. . . . [D]efendants were fully aware of Shawn's severe intoxication and inability to defend himself when they assaulted

19

him."). Mr. Martinez argues that the district court misapplied U.S.S.G. § 3A1.1 because "[t]he enhancement does not apply merely because a victim is extremely intoxicated." Martinez Br. at 17. This argument challenges the district court's interpretation of the Guidelines rather than its factual findings, so we apply de novo review. We find no error in the district court's interpretation of the Guidelines.

A vulnerable victim is a person "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2. "The status of 'vulnerable victim' hinges on the idea that some characteristic renders a victim 'particularly susceptible' to the criminal conduct." *United States v. Shumway*, 112 F.3d 1413, 1423 (10th Cir. 1997). "In other words, the 'vulnerable victim' is someone who is unable to protect himself or herself from criminal conduct, and is therefore in need of greater societal protection than the average citizen." *Id.* "In assessing vulnerability, the sentencing court must make an individualized determination; it is not enough that a victim belongs to a class generally considered vulnerable." *Scott*, 529 F.3d at 1300–01.

We have previously upheld the application of the vulnerable-victim enhancement where the victim was, among other things, intoxicated. *See Checora*, 175 F.3d at 790 ("The fact Murray was intoxicated, outnumbered, and much smaller in stature than his assailants suggests to us . . . that he was

20

particularly susceptible to the defendants' criminal conduct."). Irrespective of whether mere intoxication, standing alone, could be sufficient to support application of the vulnerable-victim enhancement, when an individual's level of intoxication reaches the point that he is incapable of protecting himself from the harm that is a reasonably foreseeable product of the defendant's criminal conduct—and, therefore, he is particularly susceptible to such conduct—we conclude that the vulnerable-victim enhancement may be properly applied. That is precisely the situation presented here. Put succinctly: When an individual, like Mr. Begay, is so drunk that he is unable to protect himself, he may be properly considered an unusually vulnerable victim with regard to a physical assault of the type at issue here.

Decisions of our sister circuits involving analogous circumstances provide further support for our conclusion that, in certain circumstances when extreme levels of intoxication render an individual unable to defend himself, that individual may properly be considered unusually vulnerable for purposes of the enhancement under § 3A1.1. *See United States v. Betone*, 636 F.3d 384, 388 (8th Cir. 2011) ("Betone argues that the enhancement was misapplied . . . because Jensen was not intoxicated to the point where he was a vulnerable victim . . . . Jensen was passed out, incapable of consenting and therefore vulnerable due to his physical condition. The district court did not err in finding Jensen a vulnerable victim and applying such an enhancement . . . ." (brackets omitted)

21

(ellipsis omitted) (citation omitted) (internal quotation marks omitted)); *cf. United States v. Altman*, 901 F.2d 1161, 1165 (2d Cir. 1990) ("[H]e drugged his victims, making them physically and mentally more vulnerable. . . . [T]he court properly considered Altman's drugging of his victims to enhance his sentence under section 3A1.1.").

As discussed above, Mr. Begay's heavy intoxication left him unable to protect himself, rendering him unusually vulnerable. Accordingly, we find that the district court did not err in determining that Mr. Begay was a vulnerable victim based on his level of intoxication.

## III. Mr. Martinez Knew Or Should Have Known That His Victim Was Unusually Vulnerable

The district court found that Mr. Martinez knew that Mr. Begay was unusually vulnerable. *See* Supp. R. Martinez, Vol. 1, at 72 ("His unusual vulnerability was obvious to anyone who saw . . . ."); *id.* at 145 ("He was a vulnerable person and you saw it . . . ."); *id.* at 151 ("His vulnerability was immediately apparent to both defendants."). In support of this determination, the district court found that Mr. Martinez knew that Mr. Begay was extremely intoxicated and unable to defend himself. *See, e.g.*, *id.* at 150 ("[D]efendants were fully aware of Shawn's severe intoxication and inability to defend himself when they assaulted him."). As noted above, whether a defendant knew or should have known of his victim's unusual vulnerability is a question of fact reviewed

22

only for clear error, but whether the facts found by the district court are sufficient to apply the vulnerable-victim enhancement is a question of law reviewed de novo.

Mr. Martinez argues that because he became an alcoholic as a minor, his intoxication on the night of his offense was involuntary, and therefore "negates the mental element of 'knew or should have known'" that is required for the vulnerable-victim enhancement to apply. Martinez Br. at 19–20. At oral argument, Mr. Martinez conceded that his "argument on appeal is somewhat different than the argument below." Oral Arg. at 7:54–8:07. In fact, Mr. Martinez did not present this argument to the district court at all, so we will review only for plain error.

As previously noted, under plain-error review, Mr. Martinez must show there is: (1) error; (2) that is plain; (3) that affects his substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See Hall*, 625 F.3d at 684. As particularly relevant here, we note that, in order to be plain, the error must be clear or obvious. *See, e.g.*, *United States v. Taylor*, 514 F.3d 1092, 1100 (10th Cir. 2008) ("The Supreme Court has explained that error is plain when it is 'clear' or 'obvious.'" (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). "In turn, to be clear or obvious, the error must be contrary to well-settled law." *Id.*; *see, e.g.*, *United States v. Whitney*, 229 F.3d 1296, 1309 (10th Cir. 2000) ("An error is clear and obvious

23

when it is contrary to well-settled law."). "In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003); *accord United States v. Thornburgh*, 645 F.3d 1197, 1208 (10th Cir. 2011); *see United States v. Wardell*, 591 F.3d 1279, 1298 (10th Cir. 2009) (describing well-settled law as "the current law of the Supreme Court or the Tenth Circuit").

At the outset, we note that it is unclear whether Mr. Martinez is asserting that the district court clearly erred in making the *factual finding* that he knew or should have known that Mr. Begay was unusually vulnerable due to his alleged state of involuntary intoxication, or whether Mr. Martinez is arguing that the district court's finding was erroneous *as a matter of law*. *Compare* Martinez Br. at 18 ("The district court *clearly erred* when it found that Mr. Martinez either knew or should have known that Mr. Begay was unusually vulnerable due to physical or mental condition." (emphasis added)), *and id.* at 20 ("[T]he district court *clearly erred* when it found that Mr. Martinez knew or should have known this fact." (emphasis added)), *with id.* at 20 ("This enhancement . . . is not intended to apply where, due to an irresistible force, an individual is unable to ascertain the unusual vulnerability of the victim.").

To the extent that Mr. Martinez is arguing that the district court clearly erred in making the *factual finding* that he knew or should have known that Mr. Begay was unusually vulnerable due to his (Mr. Martinez's) purported state of

24

involuntary intoxication, his argument is not cognizable here under plain-error review. *See Heredia-Cruz*, 328 F.3d at 1288–89; *Lee*, 989 F.2d at 380. Even assuming, *arguendo*, that we could reach such a factual challenge, Mr. Martinez would be hard-pressed to establish error, much less clear or obvious error. In both his brief and at oral argument, Mr. Martinez pointed to evidence of his alcoholism and alcohol consumption on the night of his offense. However, he did not provide evidentiary support for his contention that he "was unable to ascertain at the time of the offense that Mr. Begay was unusually vulnerable." Martinez Br. at 20. To the contrary, as discussed above, the district court found that Mr. Begay's severe intoxication and unusual vulnerability were immediately obvious to everyone on the scene, including Mr. Martinez. Therefore, any fact-based challenge to the district court's assessment of the vulnerable-victim enhancement would fail.

To the extent that Mr. Martinez is making an argument that the district court committed legal error in applying the vulnerable-victim enhancement, given his alcoholism and resulting state of alleged involuntary intoxication, Mr. Martinez still cannot obtain relief. His challenge is patently flawed under the second prong of the plain-error test. That is, Mr. Martinez cannot establish that the district committed clear or obvious legal error in applying the vulnerable-victim enhancement.

The vulnerable-victim enhancement applies only if the defendant either

25

knew or *should have known* that his victim was unusually vulnerable.  *See*

U.S.S.G. § 3A1.1(b)(1); *United States v. Harris*, 104 F.3d 1465, 1476 (5th Cir.

1997) ("Contrary to the requirements of § 3A1.1, he neither knew nor should have

known that person who had been shot was unusually vulnerable.  The appellant

thus lacked the requisite *mens rea* to support enhancement based upon the

vulnerability of [the victim]."); *United States v. White*, 974 F.2d 1135, 1140 (9th

Cir. 1992) (distinguishing "the *mens rea* required to convict the defendant of the

crime and the culpability required to trigger the application of § 3A1.1").  Thus,

"[w]hether the defendant[] actually knew [Mr. Begay] was intoxicated is not

necessarily dispositive.  The vulnerable-victim enhancement is also appropriate if

the defendant *should have known* that a victim of the offense was unusually

vulnerable or otherwise particularly susceptible to the criminal conduct."

*Checora*, 175 F.3d at 789 (brackets omitted) (ellipsis omitted) (quoting U.S.S.G.

§ 3A1.1(b) (1995)) (internal quotation marks omitted).[7]

---

[7]     In *Checora*, the defendants argued that "they were too drunk to know that [their victim] was vulnerable by virtue of his intoxication."  175 F.3d at 789. We rejected this argument and upheld the district court's application of the vulnerable-victim enhancement because the "[d]efendants were not so completely inebriated that they had no ability to comprehend [their victim's] condition," and because "the defendants' alleged cognitive incapacitation was *of their own doing*."  *Id.* (emphasis added).  Mr. Martinez seeks to escape *Checora*'s holding by arguing that his intoxication was *involuntary* because he became addicted to alcohol while he was still a minor.  *See* Martinez Br. at 19 ("Due to Mr. Martinez's alcohol dependency, which was not voluntary since he became an alcoholic as a minor, his intoxication on the night of the offense was not

(continued...)

26

Accordingly, Mr. Martinez would need to demonstrate that under well-settled law it cannot be said that a defendant should have known of a victim's unusual vulnerability, if his intoxication is involuntary due to alcoholism. However, Mr. Martinez has not identified a single case from the Supreme Court or from this circuit that comes close to establishing this proposition. Nor have we found any such authority. In itself, this suggests that Mr. Martinez has reached the end of the road under plain-error review. We acknowledge that Mr. Martinez does marshal some legal authority in support of his claim, citing to *Powell v. Texas*, 392 U.S. 514 (1968), *Driver v. Hinnant*, 356 F.2d 761 (4th Cir. 1966), and *State v. Seely*, 510 P.2d 115 (Kan. 1973). But he does so only for the limited proposition that an alcoholic is compelled to drink by his addiction. *See* Martinez Br. at 19. Even if this authority supported that proposition in a manner germane to the criminal-law context,[8] it would not begin to resolve the question of whether

---

[7]       (...continued)
voluntary."). For the reasons noted *infra*, however, this argument is unavailing, at least in the context of plain-error review.

[8]       There is some reason to question whether it does. *Powell* and *Driver* considered whether convicting an alcoholic of public intoxication constitutes cruel and unusual punishment under the Eighth Amendment. A four-Justice plurality in *Powell* was "unable to conclude . . . that chronic alcoholics . . . suffer from such an irresistible compulsion to drink and to get drunk in public that they are utterly unable to control their performance of either or both of these acts and thus cannot be deterred at all from public intoxication." 392 U.S. at 535 (plurality opinion). And, although *Driver* suggested an affirmative answer to the question, *see* 356 F.2d at 764 ("[O]ur excusal of the chronic alcoholic from

(continued...)

27

a defendant may be relieved of the legal responsibility for being aware of facts that would have been perceptible to a reasonable person in his situation—*viz.*, the legal responsibility for facts that he should have known about—simply because the defendant was intoxicated due to addictive drinking (i.e., in a purported state of involuntary intoxication). Therefore, we cannot say that the district court committed clear or obvious legal error in determining that the vulnerable-victim enhancement could be applied, even though the defendant claims that "due to an irresistible force [i.e., alcoholism], [the defendant] is unable to ascertain the unusual vulnerability of the victim." *Id.* at 20.

Accordingly, Mr. Martinez's challenge to the district court's ruling that he knew or should have known of Mr. Begay's vulnerability cannot succeed under plain-error review, regardless of whether his argument is framed as a factual or

---

[8]    (...continued)
criminal prosecution is confined exclusively to those acts on his part which are compulsive as symptomatic of the disease. With respect to other behavior—not characteristic of confirmed chronic alcoholism—he would be judged as would any person not so afflicted."), *Driver* may not be good law after *Powell*. *See Fisher v. Coleman*, 486 F. Supp. 311, 316 (W.D. Va. 1979) ("[T]he [*Powell*] court overruled and made inapplicable the holding[] in the case[] of *Driver . . .* insofar as [that] case[] held that the Eighth Amendment bars criminal punishment of behavior symptomatic of alcoholism." (citations omitted)), *aff'd*, 639 F.2d 191 (4th Cir. 1981); *Rakes v. Coleman*, 359 F. Supp. 370, 380 (E.D. Va. 1973) ("[T]he Court concludes that *Powell* overrules *Driver*."). Furthermore, in *Seely*, although recognizing the viability of a state-law involuntary intoxication defense, the Kansas Supreme Court conditioned a defendant's receipt of a jury instruction regarding the defense on a showing that an "irresistible force" compelled him to drink. 510 P.2d at 121.

28

legal one. The district court did not plainly err in finding that U.S.S.G. § 3A1.1's *mens rea* requirement was satisfied and, consequently, that the vulnerable-victim enhancement could be appropriately applied to Mr. Martinez.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** Mr. Talk's and Mr. Martinez's sentences.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge